Docket No. 100466.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

GEORGE HUDSON, SR., Indiv. and on Behalf of the Estate of George Hudson, Jr., Deceased, *et al*., Appellants, v. THE CITY OF CHICAGO *et al*., Appellees.

*Opinion filed January 25, 2008.*

CHIEF JUSTICE THOMAS delivered the judgment of the court, with opinion.

Justices Freeman, Garman, and Karmeier concurred in the judgment and opinion.

Justice Kilbride dissented, with opinion, joined by Justice Fitzgerald.

Justice Kilbride dissented, with opinion, upon denial of rehearing, joined by Justice Fitzgerald.

Justice Burke took no part in the decision.

## OPINION

On March 30, 1999, plaintiffs, George Hudson, Sr., on behalf of the estate of his deceased son, George Hudson, Jr., and Ednarine Hudson, individually and as mother and next friend of Ronita Milton, filed suit against the City of Chicago, former Chicago Fire Commissioner Edward P. Altman, and unknown Chicago fire department personnel. Count I of plaintiffs' complaint alleged

negligence, and count II alleged willful and wanton misconduct in providing emergency services to George Hudson, Jr.

In October 1999, the circuit court of Cook County granted defendants' motion to dismiss the negligence count on the ground that the City and its employees were immune under section 3.150 of the Emergency Medical Services (EMS) Systems Act (210 ILCS 50/3.150 (West 2000)).

On July 25, 2002, plaintiffs voluntarily dismissed the remaining willful and wanton misconduct count pursuant to section 2–1009 of the Code of Civil Procedure (the Code) (735 ILCS 5/2–1009 (West 2000)). On July 23, 2003, plaintiffs refiled their action, setting forth only one count for willful and wanton misconduct. Defendants moved to dismiss pursuant to section 2–619 of the Code (735 ILCS 5/2–619 (West 2006)), arguing that the refiled action was barred by *res judicata.* The circuit court granted the motion, and the appellate court affirmed (No. 1–04–0338 (unpublished order under Supreme Court Rule 23)). We allowed plaintiffs' petition for leave to appeal (210 Ill. 2d R. 315), and we granted the Illinois Trial Lawyers Association leave to file a brief *amicus curiae* in support of plaintiffs (210 Ill. 2d R. 345).

BACKGROUND

In November 1998, five-year-old George Hudson, Jr., died from acute asthma exacerbation. On March 30, 1999, plaintiffs filed a two-count wrongful-death complaint (*Hudson I*), alleging that on November 25, 1998, George Jr.'s mother, Ednarine, called 911 to request emergency assistance and informed the operator that the child was having breathing problems. Despite being informed that the child was suffering severe breathing problems, defendants dispatched a fire engine. The fire engine had no advanced life support and was the wrong equipment under the circumstances. An advanced life support ambulance arrived approximately 15 minutes after Ednarine's 911 call. Plaintiffs claimed that George Jr. died as a result of the delay in providing advanced life support. Plaintiffs' complaint alleged in count I that defendants were negligent and in count II that defendants had engaged in willful and wanton misconduct.

Defendants moved to dismiss the negligence count pursuant to section 2–619(a)(9) of the Code (735 ILCS 5/2–619(a)(9) (West 2000)), claiming immunity under section 3.150 of the EMS Act (210 ILCS 50/3.150 (West 2000)). In October 1999, the circuit court dismissed plaintiffs' negligence claim with prejudice and continued the cause of action as to the willful and wanton misconduct count. On July 25, 2002, the circuit court granted plaintiffs' motion to voluntarily dismiss the willful and wanton misconduct count.

On July 23, 2003, plaintiffs refiled their wrongful-death action, setting forth only one count for willful and wanton misconduct (*Hudson II*). The refiled complaint additionally claimed that prior to November 25, 1998, defendant City of Chicago knew that George Jr. had previously suffered serious asthmatic episodes at his home.

Defendants moved to dismiss *Hudson II* pursuant to section 2–619 of the Code (735 ILCS 5/2–619 (West 2000)), claiming that it was barred by *res judicata*. The circuit court agreed with defendants' argument that the dismissal of plaintiffs' negligence claim in *Hudson I* constituted an adjudication on the merits and that *res judicata* bars not only matters that were determined in the first action, but also matters that could have been determined in the original action. The circuit court therefore held that *res judicata* barred plaintiffs' willful and wanton claim and granted defendants' motion to dismiss plaintiffs' refiled action.

Plaintiffs appealed, contending that the circuit court improperly dismissed *Hudson II* based on *res judicata*. The appellate court affirmed, relying on *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325 (1996), and held that *res judicata* barred plaintiffs from refiling their willful and wanton misconduct claim.

## ANALYSIS

The central issue is whether the involuntary dismissal of plaintiffs' negligence claim and plaintiffs' subsequent voluntary dismissal of their remaining willful and wanton misconduct claim barred the refiling of their willful and wanton misconduct claim under the doctrine of *res judicata*. Plaintiffs contend that the appellate court erred in concluding that the willful and wanton misconduct claim in *Hudson II* was barred by *res judicata* because there was no final adjudication on the merits

of their voluntarily dismissed willful and wanton misconduct claim in *Hudson I*. Defendants maintain that the dismissal of plaintiffs' negligence count in *Hudson I* was a final adjudication on the merits for purposes of *res judicata* and that, applying this court's decision in *Rein*, *res judicata* bars plaintiffs' willful and wanton misconduct claim. We agree with defendants and hold that plaintiffs' refiled willful and wanton misconduct claim is barred by *res judicata*.

"The doctrine of *res judicata* provides that a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their privies on the same cause of action." *Rein*, 172 Ill. 2d at 334. *Res judicata* bars not only what was actually decided in the first action but also whatever could have been decided. *La Salle National Bank v. County Board of School Trustees*, 61 Ill. 2d 524, 529 (1975). Three requirements must be satisfied for *res judicata* to apply: (1) a final judgment on the merits has been rendered by a court of competent jurisdiction; (2) an identity of cause of action exists; and (3) the parties or their privies are identical in both actions. *Downing v. Chicago Transit Authority*, 162 Ill. 2d 70, 73-74 (1994).

Plaintiffs do not dispute that the second and third requirements are met here. Plaintiffs contend, however, that the first element is not satisfied because the willful and wanton misconduct count was never adjudicated on the merits. Plaintiffs concede that their negligence claim was dismissed on the merits in *Hudson I*. The trial court dismissed the negligence count based on the defendants' statutory immunity, and Supreme Court Rule 273 provides that "an involuntary dismissal of an action, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join an indispensable party, operates as an adjudication upon the merits" (134 Ill. 2d R. 273). Accordingly, the involuntary dismissal of plaintiffs' negligence claim in *Hudson I* constituted an adjudication on the merits for *res judicata* purposes.

After their negligence count was dismissed on the merits, plaintiffs voluntarily dismissed their willful and wanton count pursuant to section 2–1009(a) of the Code (735 ILCS 5/2–1009(a) (West 2000)). Section 2–1009(a) provides that "[t]he plaintiff may, at any time before trial or hearing begins, *** dismiss his or her action or any part thereof as to any defendant, without prejudice, by order filed in the

cause." 735 ILCS 5/2–1009(a) (West 2000). Once the voluntary dismissal was entered, *Hudson I* was terminated in its entirety and all final orders became immediately appealable. See *Dubina v. Mesirow Realty Development, Inc.*, 178 Ill. 2d 496, 503 (1997). Approximately one year later, plaintiffs refiled their willful and wanton claim in *Hudson II*, purportedly pursuant to section 13–217 of the Code. This section provides:

> "Reversal or dismissal. In the actions specified in Article XIII of this Act or any other act or contract where the time for commencing an action is limited, if judgment is entered for the plaintiff but reversed on appeal, or if there is a verdict in favor of the plaintiff and, upon a motion in arrest of judgment, the judgment is entered against the plaintiff, or the action is voluntarily dismissed by the plaintiff, or the action is dismissed for want of prosecution, or the action is dismissed by a United States District Court for lack of jurisdiction, or the action is dismissed by a United States District Court for improper venue, then, whether or not the time limitation for bringing such action expires during the pendency of such action, the plaintiff, his or her heirs, executors or administrators may commence a new action within one year or within the remaining period of limitation, whichever is greater, after such judgment is reversed or entered against the plaintiff, or after the action is voluntarily dismissed by the plaintiff, or the action is dismissed for want of prosecution, or the action is dismissed by a United States District Court for lack of jurisdiction, or the action is dismissed by a United States District Court for improper venue." 735 ILCS 5/13–217 (West 1994).[1]

This filing by plaintiffs was *not* a continuation of *Hudson I*, but rather an entirely new action. See *Dubina*, 178 Ill. 2d at 504. Plaintiffs contend that they were entitled to proceed with *Hudson II* because, as

---

[1]This version of section 13–217 preceded the amendments of Public Act 89–7, §15, eff. March 9, 1995. This court found Public Act 89–7 unconstitutional in its entirety in *Best v. Taylor Machine Works*, 179 Ill. 2d 367 (1997). The version of section 13–217 currently in effect is, therefore, the version that preceded the amendments of Public Act 89–7. See *Unzicker v. Kraft Food Ingredients Corp.*, 203 Ill. 2d 64, 71 n.1 (2002).

far as their willful and wanton misconduct claim was concerned, there was no order that was both final and meritorious.

Defendants argue, and we agree, that plaintiffs' argument is defeated by this court's decision in *Rein*. In *Rein*, the plaintiffs filed an eight-count complaint (*Rein I*) alleging that the defendants fraudulently misrepresented the character of certain securities that they had sold to the plaintiffs. In some of the counts, the plaintiffs sought rescission of the purchase pursuant to section 13 of the Illinois Securities Law of 1953 (Ill. Rev. Stat. 1989, ch. 121½, par. 137.13(A)(1)). In other counts, the plaintiffs alleged common law fraud and breach of fiduciary duty. The trial court dismissed three of the rescission counts on statute of limitations grounds. The trial court denied the plaintiffs' request for a Rule 304(a) (155 Ill. 2d R. 304(a)) finding that there was no just reason to delay enforcement or appeal of the dismissed rescission counts. Plaintiffs then voluntarily dismissed the remaining counts of their complaint pursuant to section 2–1009(a) of the Code. Plaintiffs appealed the dismissal of the rescission counts, and the appellate court affirmed the dismissal. See *Rein*, 172 Ill. 2d at 328-30.

After the unsuccessful appeal, and approximately 19 months after voluntarily dismissing their remaining counts, plaintiffs refiled their entire case, including the rescission counts that were the subject of the unsuccessful appeal in *Rein I* in a complaint that was "virtually identical" to the complaint filed in *Rein I*. *Rein*, 172 Ill. 2d at 331. The trial court dismissed plaintiffs' complaint based on *res judicata* and statute of limitations grounds. The appellate court affirmed the dismissal of plaintiffs complaint. *Rein v. David A. Noyes & Co.*, 271 Ill. App. 3d 768 (1995). The majority held that both the rescission counts and the common law counts were barred by *res judicata*. One justice dissented, arguing that *res judicata* did not bar the common law counts. *Rein*, 271 Ill. App. 3d at 775-78 (Rathje, J., dissenting).

On appeal, this court affirmed the appellate court majority. This court first held that the rescission counts were clearly barred by *res judicata*. Those counts had been dismissed on statute of limitations grounds in *Rein I*, and the dismissal was upheld on appeal. *Rein*, 172 Ill. 2d at 334-36.

This court next discussed the common law counts, which had been voluntarily dismissed by the plaintiffs after the dismissal of the

rescission counts. This court explained that three requirements must be met for *res judicata* to apply. There must be: (1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) identity of cause of action; and (3) identity of parties or their privies. *Rein*, 172 Ill. 2d at 337. The court then determined that all three of these requirements had been met with respect to the counts that plaintiffs had voluntarily dismissed. *Rein*, 172 Ill. 2d at 338-39. This court determined that there was an identity of parties (*Rein*, 172 Ill. 2d at 338) and an identity of causes of action (*Rein*, 172 Ill. 2d at 338-39). With respect to whether there was an adjudication on the merits of the voluntarily dismissed counts, this court held the following:

> "The first element of *res judicata* is met here because the dismissal of the rescission counts with prejudice in *Rein I* operates as an adjudication on the merits for purposes of *res judicata*, as explained earlier. Although there was not an adjudication on the merits of the common law counts in *Rein I*, the concept of *res judicata* is broader than plaintiffs suggest. If the three elements necessary to invoke *res judicata* are present, *res judicata* will bar not only every matter that was actually determined in the first suit, but also every matter that might have been raised and determined in that suit. *Torcasso v. Standard Outdoor Sales, Inc.*, 157 Ill. 2d 484, 490 (1993). Therefore, if the three requirements of *res judicata* are met and the common law counts could have been determined in *Rein I*, plaintiffs will be barred from litigating the common law counts in *Rein II*.

> \* \* \*

> Because the common law counts arise out of the same set of operative facts as the rescission counts, plaintiffs could have litigated and resolved these claims in *Rein I*. Having failed to do so, plaintiffs are barred by the doctrine of *res judicata* from attempting to raise and litigate them in *Rein II*, even though there was no adjudication on the merits of these claims in the prior suit. See Restatement (Second) of Judgments §24 (1982)." *Rein*, 172 Ill. 2d at 337-39.

After holding that the voluntarily dismissed counts were barred by *res judicata*, this court next discussed the policy against claim-splitting. This court explained that the principle that *res judicata* prohibits a

party from seeking relief on the basis of issues that could have been resolved in a previous action serves to prevent parties from splitting their claims into multiple actions. *Rein*, 172 Ill. 2d at 339-42. This court then adopted the exceptions to claim-splitting set forth in section 26(1) of the Restatement (Second) of Judgments (1982). Under this section, the rule against claim-splitting would not bar a second action if:

> "(1) the parties have agreed in terms or in effect that plaintiff may split his claim or the defendant has acquiesced therein; (2) the court in the first action expressly reserved the plaintiff's right to maintain the second action;[2] (3) the plaintiff was unable to obtain relief on his claim because of a restriction on the subject-matter jurisdiction of the court in the first action; (4) the judgment in the first action was plainly inconsistent with the equitable implementation of a statutory scheme; (5) the case involves a continuing or recurrent wrong; or (6) it is

---

[2]The comments to section 26 of the Restatement indicate that an example of a court expressly maintaining a plaintiff's right to maintain a second action may be when the court indicates that its judgment is without prejudice to the bringing of a second action. See Restatement (Second) of Judgments §26(1), Comment *b* (1982). This comment further references section 20(1)(b), and Comment f-i thereto (Restatement (Second) of Judgments §20(1)(b), Comments *f* through *i* (1982)), which sets forth the unremarkable proposition that a voluntary dismissal of an *action* is typically without prejudice to the bringing of a second action. When commenting on this particular exception to claim-splitting, this court explained in *Rein* that the use of "without prejudice" language is *not* sufficient to protect a plaintiff against the bar of *res judicata* when another part of plaintiff's case has gone to final judgment in a previous action: "the trial judge's granting plaintiffs' motion to voluntarily dismiss the common law counts without prejudice under section 2–1009 should not be interpreted as immunizing plaintiffs against defenses defendants may raise when the voluntarily dismissed counts were refiled." *Rein*, 172 Ill. 2d at 342. As *Rein* pointed out, a plaintiff could not file a complaint with multiple counts, take a voluntarily dismissal without prejudice of some of the counts, pursue the undismissed counts to final judgment, and then harass the defendant with successive suits simply because the dismissals of those counts were entered "without prejudice." *Rein*, 172 Ill. 2d at 343.

clearly and convincingly shown that the policies favoring preclusion of a second action are overcome for an extraordinary reason." *Rein*, 172 Ill. 2d at 341.

The court found that none of these exceptions were present. *Rein*, 172 Ill. 2d at 341-42. Next, this court addressed plaintiffs' claim that sections 2–1009 and 13–217 of the Code gave them an absolute right to refile the voluntarily dismissed counts within one year or within the remaining period of limitations. This court acknowledged plaintiffs' rights under these sections, but held that these legislatively created rights did not automatically immunize plaintiffs against *res judicata* or any other legitimate defenses that a defendant might assert. *Rein*, 172 Ill. 2d at 342-43. Finally, this court noted two policy justifications for its holding. First, it would prevent a party from filing an action with multiple claims, dismissing several of the counts, obtaining a final judgment on the undismissed counts and, if unsuccessful on the counts not dismissed, refiling the previously dismissed counts. Second, it would prohibit plaintiffs from using voluntary dismissals to circumvent a judge's refusal of a Rule 304(a) certification. *Rein*, 172 Ill. 2d at 343.

*Rein* thus stands for the proposition that a plaintiff who splits his claims by voluntarily dismissing and refiling part of an action after a final judgment has been entered on another part of the case subjects himself to a *res judicata* defense. Once the holding of *Rein* is understood, the analysis in the present case becomes an unremarkable exercise. If we simply insert the case names and the types of counts from this case into the above-quoted passage from *Rein*, we would get the following:

> "The first element of *res judicata* is met here because the dismissal of the [negligence count] with prejudice in [*Hudson I*] operates as an adjudication on the merits for purposes of *res judicata*, as explained earlier. Although there was not an adjudication on the merits of the [willful and wanton count] in [*Hudson I*], the concept of *res judicata* is broader than plaintiffs suggest. If the three elements necessary to invoke *res judicata* are present, *res judicata* will bar not only every matter that was actually determined in the first suit, but also every matter that might have been raised and determined in that suit. *Torcasso v. Standard Outdoor Sales, Inc.*, 157 Ill. 2d

484, 490 (1993). Therefore, if the three requirements of *res judicata* are met and the [willful and wanton count] could have been determined in [*Hudson I*], plaintiffs will be barred from litigating the [willful and wanton count] in [*Hudson II*].

\* \* \*

Because the [willful and wanton count] arises out of the same set of operative facts as the [negligence count], plaintiffs could have litigated and resolved [this claim] in [*Hudson I*]. Having failed to do so, plaintiffs are barred by the doctrine of *res judicata* from attempting to raise and litigate [it] in [*Hudson II*], even though there was no adjudication on the merits of [this claim] in the prior suit."[3] See *Rein*, 172 Ill. 2d at 337-39.

We next look to see if any of the exceptions to the rule against claim-splitting are applicable. See *Rein*, 172 Ill. 2d at 341. Just as none of them were present in *Rein*, none of them are present here. Accordingly, *Rein* compels an affirmance of the appellate court's decision.

Plaintiffs and ITLA take two different approaches in trying to avoid this clearly controlling authority. Plaintiffs argue that *Rein* is distinguishable, while ITLA argues that *Rein* was right for the wrong reason. According to ITLA, *Rein* reached the correct result but the analysis it used threatens separation of powers principles. We address plaintiffs' arguments first.

Plaintiffs first contend that *Nowak v. St. Rita High School*, 197 Ill. 2d 381 (2001), is more similar to this case than *Rein* and that *Nowak* compels a reversal of the appellate court. This argument is easily

---

[3]If there was any doubt whether this court viewed the refiling of a voluntarily dismissed count as a new action, it was resolved in *Dubina v. Mesirow Realty Development, Inc.*, 178 Ill. 2d 496, 504 (1997), in which this court explained that a refiled count was a new, distinct action. Thus, when a plaintiff voluntarily dismisses the remaining part of an action, all final orders in the old action become immediately appealable. The refiling of the voluntarily dismissed count does not transform the final orders entered in the previous case into nonfinal ones, because the refiling commences a new action. *Dubina*, 178 Ill. 2d at 503-04.

refuted. In *Nowak*, the plaintiff sought recovery for a violation of the Americans with Disabilities Act of 1990 (ADA) (42 U.S.C. §12101 *et seq*. (1994 & Supp. 1997)). He brought his action, along with a pendent state claim, in federal court. The district court granted the defendant summary judgment on the ADA claim, finding that the plaintiff was not a "qualified individual" under the ADA. The court then exercised its statutory discretion to decline jurisdiction over the pendent state claim and dismissed that claim for lack of jurisdiction. When the plaintiff refiled the state claim in state court, the defendant argued that it was barred by *res judicata*. This court agreed with the appellate court's conclusion that *res judicata* did not bar the claim. The defendant in *Nowak* relied on *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290 (1998), in which this court held that a plaintiff was barred by *res judicata* from bringing claims in state court that he could have asserted in a previous federal action. This court distinguished *River Park* as follows:

"Because plaintiff was required to assert all of its related claims in the federal action, and failed to do so, and because the dismissal of the federal action constituted an adjudication on the merits for purposes of Supreme Court Rule 273 (134 Ill. 2d R. 273), we found that the doctrine of *res judicata* had been properly applied by the circuit court to bar the subsequent assertion of claims that *should* have been raised in the federal action.

In *this* case, plaintiff asserted his contract tenure claim in the federal action, as required by the transactional test, only to have his claim dismissed by the district court 'for lack of jurisdiction' after an adverse decision on his ADA claim. Whether that dismissal was discretionary or otherwise is beside the point; it was a dismissal for lack of jurisdiction. There was no adjudication of the merits on *that* claim despite plaintiff's proper and timely assertion of the claim. With respect to that timely asserted claim, plaintiff did not get his day in court and, therefore, *res judicata* does not apply." (Emphases in original.) *Nowak*, 197 Ill. 2d at 392.

Plaintiffs argue that *Nowak* is indistinguishable from the present case, focusing on the above statement that "there was no adjudication of the merits on that claim despite plaintiff's proper and timely

assertion of the claim." However, the very next sentence shows why the two cases are different. The plaintiff in *Nowak* did not get his day in court on his dismissed state law claim. The federal court declined to exercise jurisdiction over that claim, so plaintiff had not had the opportunity to litigate that claim when he filed it in state court. By contrast, plaintiffs here, just like the plaintiffs in *Rein*, did have the opportunity to litigate all of their claims. However, they chose to voluntarily dismiss part of their case and commence a second action, after part of their case had been finally determined in a previous action. Thus, it is the following passage from *Rein*, rather than the above passage from *Nowak*, that applies to plaintiffs:

> "Thus, following the final adjudication of the rescission counts in *Rein I*, plaintiffs were barred from litigating the common law counts in a subsequent action. To avoid the bar of *res judicata*, plaintiffs could have proceeded to a decision on the merits of the common law counts in *Rein I* and, if unsuccessful, appealed both the result regarding the common law counts and the trial judge's order dismissing the rescission counts with prejudice. By failing to proceed on the common law counts in the first action, plaintiffs are barred from attempting to litigate those issues in a subsequent suit. See Restatement (Second) of Judgments §24 (1982)." *Rein*, 172 Ill. 2d at 340.

We also noted above that *Rein* relied on the Restatement (Second) of Judgments in setting forth six exceptions to the rule against claim-splitting and determined that none of the exceptions were present in *Rein*. By contrast, the situation in *Nowak* falls squarely within the third of these exceptions: "the plaintiff was unable to obtain relief on his claim because of a restriction on the subject-matter jurisdiction of the court in the first action." See *Rein*, 172 Ill. 2d at 341. *Nowak* is plainly distinguishable.

Plaintiffs next argue that *Rein* is distinguishable and does not apply here. According to plaintiffs, *Rein* set forth a "case-specific, anti-abuse doctrine." Plaintiffs bypass *Rein*'s holding on the *res judicata* issue and focus in on the two policy considerations that *Rein* gave in support of its holding: (1) that a contrary holding would mean that any plaintiff could file a complaint with multiple counts, voluntarily dismiss some, proceed to judgment on the undismissed counts and, if

-12-

unsuccessful, refile the other counts; and (2) a contrary holding would emasculate Rule 304(a) by allowing plaintiffs to use voluntary dismissals as a means to appeal when a trial judge denies a plaintiff's request to make a Rule 304(a) finding. See *Rein*, 172 Ill. 2d at 343. This, however, was not *Rein*'s holding, nor was it *Rein*'s explanation of why *res judicata* applied. These were simply policy reasons that the court gave in favor of the result it had already reached. *Rein*'s *holding* on the *res judicata* issue, which we have discussed in detail above, was stated several paragraphs earlier in the opinion. This court held that *res judicata* applied because all three elements of *res judicata* were present. Moreover, we do not find any indication in *Rein* that its holding was meant to be limited to these two situations.

Plaintiffs seem to have no quarrel with the proposition that *res judicata* would apply to the first of the two situations described in *Rein*. The second of the two situations is closer to what happened here, except for the fact that the attorney here did not seek Rule 304(a) language after the negligence count was dismissed and did not appeal that dismissal when it became appealable.[4] This, however, is a distinction without a difference. An attorney's subjective motivation in taking a voluntary dismissal is not part of a *res judicata* analysis. As *Rein* recognized, three factors determine whether *res judicata* applies: (1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) identity of cause of action; and (3) identity of parties or their privies. *Rein*, 172 Ill. 2d at 337. *Rein*'s discussion of why these factors were met applies equally here.

If *Rein*'s central thesis–that if there is an adjudication on the merits of one claim in a case, this determination will have *res judicata* effect on the filing of any other claims that could have been raised and determined in the first case–is accepted, there are only two possible ways to reach different results in *Rein* and the present case. One possibility is that *res judicata* generally does *not* apply to the refiling of voluntarily dismissed counts after a final, appealable judgment has

---

[4]It appears that this was not a conscious choice by plaintiffs. Defendants have asked this court to take judicial notice of Cook County circuit court case No. 04–L–008252, in which plaintiffs are suing their original trial attorney for malpractice for, *inter alia*, failing to appeal the dismissal of their negligence count.

been entered in the first case, but that this court decided to apply that doctrine in *Rein* anyway because it did not like the behavior of the plaintiffs' attorneys. The other possibility is that *res judicata* generally *does* apply to the refiling of voluntarily dismissed counts after a final appealable judgment has been entered in the first case, but that some exception applies here. It cannot be the first of these two possibilities, because surely no one would argue that courts are free to invoke wholly inapplicable legal doctrines as punitive measures. Thus, if *Rein* is distinguishable it would have to be on the basis that an exception to *res judicata* applies here. However, as we noted above, this court in *Rein* set forth the six situations in which it would be inequitable to apply the rule against claim splitting, and none of those exceptions are present here.

Plaintiffs refer to *Rein* as a "pernicious error" and complain that applying *Rein* here would mean that "whenever any count in a multi-count complaint is dismissed on the merits, none of the surviving counts may be voluntarily dismissed and subsequently refiled." Plaintiffs are incorrect. This court has set forth six situations in which plaintiffs will be allowed to split their claims into multiple actions. Moreover, one of these situations is if the defendant acquiesces in the claim-splitting. *Rein*, 172 Ill. 2d at 341. Thus, if an attorney is considering taking a voluntary dismissal after a final judgment has been entered on part of his case, he can seek the defendant's acquiescence in the refiling. If the defendant is unwilling to do so, then the attorney will know that he proceeds at his peril.

Finally, plaintiffs argue that *Rein* will have a chilling effect on plaintiffs' willingness to allege novel or speculative theories of recovery. According to plaintiffs, a party will have to think twice about adding novel or speculative theories of recovery to a complaint because that party may lose his or her right to take a voluntary dismissal and to refile the complaint if the novel or speculative counts are dismissed on the merits. Defendants respond that plaintiffs are as free after *Rein* as before to bring novel or speculative claims. Moreover, they are still free to voluntarily dismiss and refile, as long as they do so before any final judgments are entered in the case. Defendants contend that the only effect of *Rein* is that plaintiffs who have both sound claims and speculative ones may have to weigh whether it is more important to take a chance with the speculative

claim or to have a better chance of being able to maintain an absolute right to voluntarily dismiss and refile. The stronger the claim, the greater the likelihood that a plaintiff will opt to include it. For more speculative or frivolous claims, however, there will be an incentive for the plaintiff to think twice about including it. Defendants see nothing wrong with such a result and argue that, had plaintiffs themselves not insisted on bringing a negligence suit against an entity that is statutorily immune from negligence suits, they would not be in the predicament they find themselves in today. Be that as it may, we add once more that *Rein* allows plaintiffs to claim-split in six different situations, and one of these is if the defendant acquiesces.

ITLA, as *amicus curiae*, argues that the result in *Rein* was correct but that the court's *res judicata* analysis was not. ITLA argues that the real problem in *Rein* was that the plaintiffs attempted to use a voluntary dismissal as a way to avoid the trial court's denial of Rule 304(a) language. ITLA seizes on the following sentence from *Rein*: "Moreover, an interpretation contrary to that reached here would emasculate Rule 304(a) by allowing a plaintiff to circumvent a trial judge's denial of a Rule 304(a) certification by refiling previously dismissed counts following an unsuccessful judgment or appeal on counts not previously dismissed." *Rein*, 172 Ill. 2d at 343. ITLA points out that this court has previously recognized the legislative prerogative in enacting sections 2–1009 and 13–217, while at the same time maintaining this court's right to regulate the judicial system. See *Gibellina v. Handley*, 127 Ill. 2d 122 (1989); *O'Connell v. St. Francis Hospital*, 112 Ill. 2d 273 (1986). ITLA maintains that this court can use this rationale to clarify that *Rein* was meant to apply only to those plaintiffs who use the voluntary dismissal and refile procedure as a means of circumventing a trial court's denial of Rule 304(a) language.

There are several problems with ITLA's argument. First, it is difficult to accept ITLA's assertion that this court's true concern in *Rein* was that the plaintiffs used the voluntary nonsuit and refile procedure as a means of circumventing the trial court's denial of Rule 304(a) certification. It seems unlikely that, if this were the court's true concern, this court would have devoted a single sentence to the issue and buried it at the end of an 11-paragraph discussion that was simply window dressing. Rather, it seems clear that the court's true concern

in *Rein* was exactly what this court stated it to be: the plaintiffs split their claims into multiple actions. Their rescission counts were finally resolved in *Rein I*, and they then instituted a new action, *Rein II*, in which they wanted their common law counts to be resolved. See *Rein*, 172 Ill. 2d at 338-42.

Second, rewriting *Rein* in the manner ITLA suggests would not address the other policy concern that this court raised in *Rein*. ITLA ignores the two sentences immediately preceding the one mentioning Rule 304(a). There, this court stated: "If plaintiffs were permitted to proceed on their common law counts, any plaintiff could file an action with multiple counts, dismiss some but not all of the counts, obtain a final judgment on the undismissed counts, and if unsuccessful on the counts not dismissed, refile the previously dismissed counts. Such a practice would impair judicial economy and would effectively defeat the public policy underlying *res judicata*, which is to protect the defendant from harassment and the public from multiple litigation." *Rein*, 172 Ill. 2d at 343. ITLA fails to explain how rewriting *Rein* to apply only to those plaintiffs who use the voluntary dismissal as a means of circumventing the denial of Rule 304(a) certification would address this concern, which the *Rein* court raised before even mentioning Rule 304(a).

Third, ITLA fails to realize that *Rein* is already based on this court's right to regulate the judicial system. As defendants point out, *res judicata* is a common law doctrine created by the courts to regulate the judicial system, and it exists to avoid burdening the courts and litigants with duplicative litigation. If a plaintiff uses sections 2–1009 and 13–217 to voluntarily dismiss and refile a claim after another part of the cause of action has gone to final judgment in a previous case, that plaintiff will have engaged in claim-splitting. Thus, in *Rein*, this court acknowledged a plaintiff's rights under sections 2–1009 and 13–217 but stated that "we do not believe that these sections should be read to automatically immunize a plaintiff against the bar of *res judicata* or other legitimate defenses a defendant may assert in response to the refiling of voluntarily dismissed counts." *Rein*, 172 Ill. 2d at 342-43.

Fourth, ITLA fails to grasp the consequences of the rule it proposes. For instance, would every plaintiff who takes a voluntary dismissal after a denial of Rule 304(a) certification be barred from

proceeding with a second action? How would the courts know which plaintiffs are seeking to undermine the court's authority and which plaintiffs simply genuinely determine later that they need to voluntarily dismiss? Further, under ITLA's rule, the plaintiff who is determined to appeal the dismissed counts at all costs would likely not even ask for the Rule 304(a) certification before voluntarily dismissing the remaining counts. This way, he or she would not have to run the risk of having the request denied and later being accused of circumventing the denial of Rule 304(a) certification. It appears, then, that rewriting *Rein* in the manner ITLA proposes would emasculate Rule 304(a), which is precisely what *Rein* claimed that it was trying to avoid. See *Rein*, 172 Ill. 2d at 343.

Finally, ITLA suggests that rewriting *Rein* in the manner it suggests is necessary to avoid violating the separation of powers clause of the Illinois Constitution (Ill. Const. 1970, art. II, §1). ITLA does not develop this argument or cite any authority, but merely suggests that the analysis this court used in *Rein* shows that this court is unduly interfering with the legislatively created right to voluntarily dismiss and refile. There is simply no basis to this argument. Sections 2–1009 and 13–217 do not address the issues of claim-splitting or *res judicata*. Section 2–1009 gives plaintiffs the right to voluntarily dismiss an action, without prejudice, in whole or in part any time before trial or hearing begins. 735 ILCS 5/2–1009(a) (West 2006). Section 13–217 is part of article XIII of the Code, which is entitled "Limitations." This section sets forth the limitations period for, *inter alia*, voluntarily dismissed actions. An action that is voluntarily dismissed by the plaintiff may be refiled within one year or within the remaining limitations period, whichever is greater. 735 ILCS 5/13–217 (West 1994). It is true that this court has referred to section 13–217 as providing a plaintiff with an "absolute" right to refile a complaint within one year or within the remaining limitations period (see *Timberlake v. Illini Hospital*, 175 Ill. 2d 159, 163 (1997); *Gendek v. Jehangir*, 119 Ill. 2d 338, 340 (1988)), but this description referred only to a plaintiff's rights *vis-a-vis* the limitations period, which is the only subject addressed by section 13–217. These sections do not address what happens when a plaintiff commences a second action after part of his cause of action has gone to final judgment in a previous case. We see no basis for concluding that the legislature

intended in sections 2–1009 and section 13–217 to give plaintiffs an absolute right to split their claims.

## CONCLUSION

The appellate court concluded correctly that *Rein* is controlling. As in *Rein*, plaintiffs commenced a new action after part of their original cause of action had gone to final judgment in a previous case. None of the exceptions to the rule against claim-splitting are present here, and thus *res judicata* barred plaintiffs' refiled complaint. We therefore affirm the appellate court's judgment.

*Appellate court judgment affirmed*.

JUSTICE BURKE took no part in the consideration or decision of this case.

JUSTICE KILBRIDE, dissenting:

I respectfully dissent from the majority opinion because plaintiffs' voluntary dismissal in *Hudson I* does not preclude plaintiffs from reinstating their willful and wanton claim. When a plaintiff voluntarily dismisses a claim or a lawsuit *without prejudice*, the plaintiff may refile the claim without being barred by *res judicata* or the rule against claim splitting.

In *Rein*, this court held that the plaintiffs' common law claims that were voluntarily dismissed without prejudice in an earlier lawsuit were barred under the doctrine of *res judicata* because the plaintiffs were splitting their claims to appeal the involuntary dismissal of their rescission claims. In *Rein*, this court devoted much of its analysis to the rule against claim-splitting and relied on the rule to support its holding that *res judicata* barred the plaintiffs from refiling their common law claims. In *Rein*, this court did not confine its ruling to cases involving claim-splitting.

I believe *Rein* reached the right result under the circumstances, but for the wrong reasons. I believe this court should now take the opportunity to limit or overrule *Rein*. *Rein* has proven unworkable, particularly in cases not involving any improper claim-splitting. This

-18-

court's decision in *Rein* was based largely on public policy concerns and not upon sound legal principles. Once the faulty underpinnings of *Rein* are understood, the foundation of *Rein*'s rationale crumbles.

In *Rein*, this court misconstrued the relationship between section 2–1009 of the Code of Civil Procedure (Code) (735 ILCS 5/2–1009 (West 2002)), section 13–217 of the Code (735 ILCS 5/13–217 (West 2002)), and Supreme Court Rule 273 (134 Ill. 2d R. 273), and then misapplied the doctrine of *res judicata* and the rule against claim-splitting.

"The doctrine of *res judicata* provides that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action." *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 389 (2001). *Res judicata* applies to bar issues that were actually decided in the first action, as well as matters that could have been decided. *La Salle National Bank v. County Board of School Trustees*, 61 Ill. 2d 524, 529 (1975). Three requirements must be satisfied for the doctrine of *res judicata* to apply: (1) a *final judgment* on the merits rendered by a court of competent jurisdiction, (2) an identity of cause of action, and (3) identity of the parties or their privies. *Nowak*, 197 Ill. 2d at 390.

The *res judicata* analysis in *Rein* was faulty because it misconstrued Supreme Court Rule 273 in concluding that there was a final judgment on the merits. *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 336 (1996). Rule 273 provides that under certain circumstances, an involuntary dismissal "operates as an adjudication upon the merits." 134 Ill. 2d R. 273. Rule 273 does not, however, provide that an adjudication on the merits is a "final" judgment on the merits, as required for *res judicata* to apply.

A final judgment is "a determination by the court on the issues presented by the pleadings which ascertains and fixes absolutely and finally the rights of the parties in the lawsuit." *Flores v. Dugan*, 91 Ill. 2d 108, 112 (1982). In *Flores*, this court held that a dismissal for want of prosecution is not a final and appealable order because the plaintiffs had the absolute right to refile their cause of action pursuant to section 24 of the Limitations Act (Ill. Rev. Stat. 1979, ch. 83, par. 24a), the predecessor to section 13–217. *Flores*, 91 Ill. 2d at 111-12. The court

reasoned that "since the plaintiffs had an absolute right to refile the action within the statutory limits, the order of dismissal could not terminate the litigation." *Flores*, 91 Ill. 2d at 114. The court further noted that the order of dismissal itself stated that it was entered without prejudice, clearly manifesting the intent of the circuit court that the dismissal order not be considered final and appealable. *Flores*, 91 Ill. 2d at 114.

The involuntary dismissal of the plaintiffs' rescission counts in *Rein I* on statute of limitation grounds was clearly an adjudication on the merits under Rule 273. It was not, however, a "final" judgment in the lawsuit as defined by this court. Thus, in *Rein*, this court misapplied Rule 273.

*Rein* also erroneously relied on *Downing v. Chicago Transit Authority*, 162 Ill. 2d 70 (1994), to support its conclusion that an involuntary dismissal operates as a final judgment on the merits for purposes of *res judicata*. In *Downing*, this court examined whether a summary judgment was a prior adjudication on the merits for *res judicata* purposes. *Downing*, 162 Ill. 2d at 73-75. *Downing* noted that, under Rule 273, involuntary dismissals operate as judgments on the merits. *Downing*, 162 Ill. 2d at 75. However, *Downing* found Rule 273 inapplicable because a summary judgment is not an involuntary dismissal. *Downing*, 162 Ill. 2d at 75. The court then determined that a summary judgment on statute of limitation grounds was not an adjudication on the merits because the merits of the action were never examined, and *res judicata* was inapplicable. *Downing*, 162 Ill. 2d at 77. The court commented:

> "To label such an order as an adjudication on the merits would be the quintessential act of exalting form over substance.
>
> Courts cannot ignore the basis on which the summary judgment was granted. If *** that basis bears no relationship to the actual merits of the case, it would be inappropriate to apply the doctrine of *res judicata ***."* *Downing*, 162 Ill. 2d at 77.

*Downing* stated that an involuntary dismissal operates as a judgment on the merits. *Downing*, 162 Ill. 2d at 75. *Downing* did not, however, determine that an involuntary dismissal operates as a "final" judgment on the merits. Accordingly, *Rein* inappropriately relied on

*Downing* in concluding that the involuntary dismissal of the plaintiffs' rescission counts operated as a final judgment on the merits.

I believe the appellate court in *Rein I* erroneously assumed that it had jurisdiction to hear the initial appeal when there was no final and appealable judgment in the lawsuit. Rule 273 only applies to "involuntary" dismissals. See *Downing*, 162 Ill. 2d at 75 ("Rule 273 applies only to an involuntary dismissal of an action, such as when a motion to dismiss under section 2–615 or section 2–619 of the Code of Civil Procedure is granted"). The plaintiffs' voluntary dismissal, without prejudice, of their common law claims in *Rein I* was clearly not an adjudication on the merits under Rule 273, nor was it a *final* judgment. Unfortunately, this court has not examined whether the appeal in *Rein I* was proper. It is clear that, under our supreme court rules, a voluntary dismissal is not a final, appealable order.

The Illinois Constitution vests this court with the authority to make rules governing appeals. Ill. Const. 1970, art. VI, §§6, 16. Appeals from final judgments of the circuit court are as a matter of right to the appellate court and the supreme court may provide by rule for appeals to the appellate court from other than final judgments of the circuit courts. Ill. Const. 1970, art. VI, §6. Supreme Court Rule 301 (155 Ill. 2d R. 301) provides that "[e]very final judgment of a circuit court in a civil case is appealable as of right." Supreme Court Rule 304 (210 Ill. 2d R. 304) provides for appeals from final judgments as to fewer than all the parties or claims. Supreme Court Rules 306, 307, and 308 (155 Ill. 2d Rs. 306, 307, 308) provide for appeals from certain specified interlocutory orders of the court. Voluntary dismissals without prejudice are not final appealable orders under the provisions of our supreme court rules. See *Flores*, 91 Ill. 2d at 114 (order stating cause is dismissed "without prejudice" is not a final and appealable order).

Applying our supreme court rules to *Rein I*, there can be no question that the plaintiffs' voluntary dismissal of their common law claims did not convert the involuntary dismissal of the rescission counts into a final and appealable order because the plaintiffs had the option to refile their voluntarily dismissed claims under section 2–1009(a) of the Code. Section 2–1009(a) provides that "[t]he plaintiff may, at any time before trial or hearing begins, *** dismiss his or her action or any part thereof as to any defendant, *without*

*prejudice*, by order filed in the cause." (Emphasis added.) 735 ILCS 5/2–1009(a) (West 2002). Since a dismissal under section 2–1009(a) is *without prejudice*, section 2–1009(a) protects a plaintiff's right to refile the voluntarily dismissed action.

*Rein*'s conclusion that the plaintiffs' voluntary dismissal of their common law claims made the involuntary dismissal of the rescission claims final and appealable is in direct conflict with other decisions of this court. Prior to *Rein*, this court consistently held that entry of a dismissal order cannot be considered final and appealable by a plaintiff during the time when the refiling option is available under section 13–217 because a plaintiff has an *absolute* right to refile the action under section 13–217. See *Flores*, 91 Ill. 2d 108; *Wold v. Bull Valley Management Co.*, 96 Ill. 2d 110 (1983); *Kahle v. John Deere Co.*, 104 Ill. 2d 302 (1984).

In *Flores*, this court held that a dismissal for want of prosecution is not a final and appealable order under Rule 301, in light of a plaintiff's absolute right to refile the suit. *Flores*, 91 Ill. 2d at 111-14. Following *Flores*, this court held in *Wold* that an order of dismissal for want of prosecution is not a final and appealable order since plaintiffs had the absolute right to refile the action. *Wold*, 96 Ill. 2d at 112. This court extended *Flores* and *Wohl* to voluntary dismissals in *Kahle*, 104 Ill. 2d 302.

In *Kahle*, this court recognized that a plaintiff cannot appeal from an order voluntarily dismissing a claim without prejudice because section 13–217 gives the plaintiff the absolute right to refile the case, thereby protecting plaintiffs from prejudice. *Kahle*, 104 Ill. 2d at 305-06. *Kahle* did, however, hold that an order granting a plaintiff's voluntary dismissal after trial has begun is final and appealable by a defendant. *Kahle*, 104 Ill. 2d at 307. *Kahle*'s rationale was based on prejudice to the defendant, when no court would be able to determine defendant's contentions of error because plaintiff's refiled case was a new case that constituted a separate cause of action. *Kahle*, 104 Ill. 2d at 306. "*Kahle* did not go so far as to make voluntary dismissals the jurisdictional basis from which nonappealable judgments could be appealed. Rather, the court made it abundantly clear that the only proper subject on appeal was the propriety of granting a voluntary dismissal" after trial had begun. *Saddle Signs, Inc. v. Adrian*, 272 Ill. App. 3d 132, 136 (1995).

Thus, in *Rein*, this court incorrectly assumed that the plaintiffs' appeal in *Rein I* was proper. This incorrect assumption was further perpetuated in *Dubina v. Mesirow Realty Development, Inc.*, 178 Ill. 2d 496 (1997), when this court held that the plaintiffs' voluntary dismissal made all prior orders entered in the action final and appealable. Although I agree with the result in *Dubina*, that the defendants were permitted to appeal because they were prejudiced by the plaintiff's voluntary dismissal, *Dubina* should have relied on *Kahle* for its rationale, rather than on *Rein* since *Rein* did not examine the appealability of the issues. Under *Kahle*, an order granting a plaintiff's voluntary dismissal is considered final and appealable solely by the defendant on the limited question of whether the trial court erred in granting a voluntary dismissal after commencing trial.

Further, *Dubina* relied on a string of appellate court cases in concluding that "[i]t is well settled that final orders entered in a case become appealable following a voluntary dismissal." *Dubina*, 178 Ill. 2d at 503, citing *Maggini v. OSF Healthcare System*, 256 Ill. App. 3d 551, 552-53 (1994); *Dubina* also cited to *Rein v. David A. Noyes & Co.*, 230 Ill. App. 3d 12, 15 (1992), *Howard v. Druckenmiller*, 238 Ill. App. 3d 937, 940-41 (1992), and *Reagan v. Baird*, 140 Ill. App. 3d 58, 62-63 (1985). However, all of these cases were based on a misinterpretation of existing precedent and a misreading of *Kahle*. The appellate court's confusion is understandable because this court's precedent on appeals following a voluntary dismissal has been less than clear. For example, *Swisher v. Duffy*, 117 Ill. 2d 376, 379 (1987), filed just three years after *Kahle*, cited *Kahle* as holding "that a voluntary dismissal is a final and appealable order." Clearly, as explained earlier, *Kahle* was limited to allowing defendants to appeal from a plaintiff's voluntary dismissal after trial had begun, and its holding was not as broad as suggested in *Swisher*. Then, in *Dubina*, this court allowed a defendant to appeal from the dismissal of its contribution claims following the plaintiff's voluntary dismissal. *Dubina* reasoned that the defendant was not appealing from the voluntary dismissal order itself but, rather, the defendant sought to appeal from the order dismissing its contribution claims. It is not surprising that our decisions have led to inconsistent and unpredictable results in the appellate court.

This court should clarify that a plaintiff's voluntary dismissal is not the jurisdictional basis for an appeal. Rather, the rule created in *Flores*, *Wold*, and *Kahle* prohibits plaintiffs from taking an appeal from a voluntary dismissal, but permits defendants to take an appeal from a plaintiff's voluntary dismissal upon a showing of prejudice.

This court has also been less than clear in determining whether a plaintiff's refiled complaint constitutes a new action or a continuation of a voluntarily dismissed action. In *Dubina*, this court noted that "the refiled action is an entirely new and separate action, not a reinstatement of the old action." *Dubina*, 178 Ill. 2d at 504. *Dubina*, in turn, relied on *Swisher*, 117 Ill. 2d at 379, *Kahle*, 104 Ill. 2d at 306, *Neuman v. Burstein*, 230 Ill. App. 3d 33, 36 (1992), *Lyon v. Hasbro Industries, Inc.*, 156 Ill. App. 3d 649, 656 (1987), and section 13–217 of the Code (735 ILCS 5/13–217 (West 2004)) for its conclusion that the original and refiled actions are completely distinct. *Swisher*, however, cited no authority for its conclusion. Likewise, *Kahle* cited no authority for its conclusion, but simply noted that the circuit judge in the refiled case has no jurisdiction to review the propriety of the dismissal of the earlier case by another circuit judge. *Kahle*, 104 Ill. 2d at 306. *Neuman* and *Lyon* relied on the "new action" language of section 13–217 of the Code. None of these cases examined whether a refiled action, although a "new action" for purposes of section 13–217, was actually a continuation of a plaintiff's former voluntarily dismissed action.

Obviously, the refiled action is assigned a new case number in the circuit court, but equally as obvious, the trial court is required to take judicial notice of rulings in the prior proceedings. See *People v. Davis*, 65 Ill. 2d 157, 161 (1976) (noting that "In McCormick on Evidence, section 330, at 766 (2d ed. 1972), it is said to be 'settled, of course, that the courts, trial and appellate, take notice of their own respective records in the present litigation, both as to matters occurring in the immediate trial, and in previous trials or hearings' "). If a refiled action were not to be considered a continuation of the voluntarily dismissed action, it would make no sense to consider a plaintiff's lack of diligence in the prior action when ruling on a motion to dismiss a case for violating Supreme Court Rule 103(b). See *Case v. Galesburg Cottage Hospital*, No. 103879 (December 13, 2007). Thus, it is not as if plaintiffs' prior cause of action never existed. Rather, from a

procedural standpoint, the refiled action is a new and distinct suit treated as a continuation of the former suit, and there can be no doubt that all prior rulings are binding in the second action. In fact, an action refiled pursuant to section 13–217 is premised on the preexisting action. Without the predicate case, there could be no refiling under section 13–217. Thus, it cannot logically be viewed as a completely new cause of action.

In *Korzinski v. Jackson*, 326 F. Supp. 2d 704, 706 (E.D. N.C. 2004), the federal court recognized that although the plain language of Rule 41, the federal counterpart to our section 13–217, indicates that an action commenced after a voluntary dismissal is a "new action," the refiled action is a continuation of the original action. The court in *Korzinski* relying on a North Carolina Supreme Court case (*Goodson v. Lehmon*, 225 N.C. 514, 518, 35 S.E.2d 623, 625 (1945)) interpreting the statutory precursor to Rule 41, reasoned:

> "[B]y its nature, a 'new action' commenced pursuant to Rule 41 must be, in all practical respects, precisely the same action that was brought prior to the voluntary dismissal. The action, which is only nominally a 'new action,' must have the 'strictest factual identity,' with the original proceeding and must 'involv[e] the same parties, the same cause of action and the same right, and this must appear from the record in the case.' " *Korzinski*, 326 F. Supp. 2d at 706.

In sum, plaintiffs are not prejudiced by taking a voluntary dismissal because of the option to refile pursuant to section 13–217. A plaintiff may not, therefore, appeal determinations in the first lawsuit until either the time expires for refiling the suit, or a judgment on the merits is issued in the refiled action.

This procedural viewpoint is distinguishable from those circumstances when a plaintiff voluntarily dismisses some but not all of its claims, and then proceeds to trial on the remaining claims. Obviously, plaintiffs would be precluded from refiling their voluntarily dismissed claims under these circumstances because a trial resulting in a final judgment on the merits would trigger the doctrine of *res judicata.*

Accordingly, I would hold that in *Rein I*, the plaintiffs improperly appealed the involuntary dismissal of their rescission counts following

the voluntary dismissal of their common law counts, and the appellate court erroneously determined it had jurisdiction to decide the appeal in the first action. I would not, therefore, rely on *Rein*'s *res judicata* analysis since the appeal in *Rein I* was improper. The situation presented on appeal to this court in *Rein* was a procedural morass. Consequently, the plaintiffs inappropriately took an appeal from their voluntary dismissal and the appellate court erroneously considered the plaintiffs' appeal on its merits while the plaintiffs' voluntarily dismissed common law claims remained subject to refiling.

Equally important, in *Rein*, this court failed to recognize that when a plaintiff elects to dismiss voluntarily a lawsuit without prejudice, the voluntary dismissal is not a final adjudication on the merits and *res judicata* is simply inapplicable. See Restatement (Second) of Judgments §20(b), Comment *a* (1982) (*res judicata* is not applicable when the plaintiff elects to dismiss voluntarily without prejudice, and "the plaintiff remains entirely free to prosecute all or any part of his claim"). Comment *f* to section 20 explains that, "[a]t common law[,] the plaintiff is permitted to submit to a nonsuit, which does not operate as a bar to another action on the same claim ***." Restatement (Second) of Judgments §20, Comment *f* (1982). *Rein* therefore erroneously applied the doctrine of *res judicata* because *res judicata* is simply inapplicable to voluntarily dismissed claims.

Moreover, this court's claim-splitting analysis in *Rein* is not in accord with the section 26(1) of the Restatement (Second) of Judgments. In *Rein*, this court specifically adopted section 26(1) of the Restatement (Second) of Judgments (Restatement (Second) of Judgments §26(1) (1982)), setting forth examples of situations when it would be inequitable to apply the rule against claim-splitting:

> "This section provides that the rule against claim-splitting does not apply to bar an independent claim of part of the same cause of action if: (1) the parties have agreed in terms or in effect that plaintiff may split his claim or the defendant has acquiesced therein; *(2) the court in the first action expressly reserved the plaintiff's right to maintain the second action*; (3) the plaintiff was unable to obtain relief on his claim because of a restriction on the subject-matter jurisdiction of the court in the first action; (4) the judgment in the first action was plainly inconsistent with the equitable implementation of

a statutory scheme; (5) the case involves a continuing or recurrent wrong; or (6) it is clearly and convincingly shown that the policies favoring preclusion of a second action are overcome for an extraordinary reason." (Emphasis added.) *Rein*, 172 Ill. 2d at 341, citing Restatement (Second) of Judgments §26(1) (1982); *Airtite v. DPR Ltd. Partnership*, 265 Ill. App. 3d 214, 219 (1994); *Thorleif v. Larson & Son, Inc. v. PPG Industries, Inc.*, 177 Ill. App. 3d 656, 661-62 (1988).

After acknowledging these exceptions to the rule against claim-splitting, this court then held in *Rein* that the exceptions should not be interpreted as immunizing plaintiffs against *res judicata*. In coming to this conclusion, *Rein* overlooked that a voluntary dismissal is not subject to *res judicata*, and that a voluntary dismissal without prejudice is an exception to the rule against claim-splitting. *Rein* also overlooked comment *b* to section 26(b). Comment *b* provides an illustration to express reservation by the court in the first action of the plaintiff's right to maintain a second action:

> "A determination by the court that its judgment is '*without prejudice*' (or words to that effect) to a second action *** should ordinarily be given effect in the second action." (Emphasis added.) Restatement (Second) of Judgments §26, Comment *b* (1982).

*Res judicata* is not applicable to a voluntary dismissal, and a voluntary dismissal without prejudice is a recognized exception to the rule against claim-splitting precisely because a voluntary dismissal without prejudice is not a final judgment on the merits. *Rein*'s failure to apply the recognized exception has created untenable consequences. In my view, *Rein* rests on extremely unsound legal grounds. This court should recognize the error of its way and overrule *Rein*.

Since the court's decision in *Rein*, other courts have struggled to distinguish *Rein* and interpreted *Rein*'s holding as limited to its unique facts to avoid unfair results. In *Piagentini v. Ford Motor Co.*, the court stated that *Rein* stands only "for the proposition that 'a plaintiff seeking to split his claims and appeal in a piecemeal manner may be barred by *res judicata*.'" *Piagentini v. Ford Motor Co.*, 366 Ill. App. 3d 395, 401 (2006), quoting *Dubina*, 178 Ill. 2d at 507. See also

-27-

*Gann v. William Timblin Transit, Inc.*, No. 07 C 3252 (N.D. Ill. November 20, 2007) ("the context in which [*Rein*] found that the plaintiff was precluded from later filing his claims was that it was doing so for the purpose of splitting his claim in order to appeal an earlier ruling").

The untenable consequences created in the wake of *Rein* are made abundantly clear by this court's attempt to apply *Rein* to this case. Plaintiffs' negligence claim in *Hudson I* was involuntarily dismissed based on statutory immunity. The involuntary dismissal operated as an adjudication on the merits under Rule 273, but not a final appealable judgment.

At the time plaintiffs' negligence claim was involuntarily dismissed plaintiffs' willful and wanton claim was still pending. Plaintiffs continued to litigate their willful and wanton claim for the next three years until plaintiffs' counsel passed away and the case was voluntarily dismissed on the day it was called for trial (presumably because substitute counsel, who appears to have been the deceased attorney's daughter, was not prepared for trial). The order entered clearly stated the cause was voluntarily dismissed "*without prejudice*." Plaintiffs, therefore, had the absolute right to refile the action under section 13–217. Accordingly, the order granting plaintiffs' motion for voluntary dismissal without prejudice was not a *final*, appealable order.

The majority, however, relying on the faulty analysis employed in *Rein* and *Dubina*, concludes that once the voluntary dismissal was entered in *Hudson I*, the litigation was terminated in its entirety and all final orders became immediately appealable. Slip op. at 4. The majority fails to acknowledge that plaintiffs' voluntary dismissal was without prejudice, and that *res judicata* is not applicable to voluntarily dismissed claims under section 20 of the Restatement (Second) of Judgments. The majority also overlooks the fact that the voluntary dismissal without prejudice in this case presents an exception to the rule against claim-splitting, as recognized by section 26 of the Restatement (Second) of Judgments, and adopted in *Rein*.

Additionally, this court has overlooked section 20(c) of the Restatement (Second) of Judgments. Section 20(c) provides that *res judicata* does not bar another action by the plaintiff on the same claim "when by statute or rule of court the judgment does not operate as a

-28-

bar to another action on the same claim." The General Assembly, in the exercise of its constitutional powers, has granted plaintiffs an absolute right to refile voluntarily dismissed complaints "within one year [from the date of dismissal] or within the remaining period of limitation, whichever is greater." 735 ILCS 5/13–217 (West 2002). See *Aranda v. Hobart Manufacturing Corp.*, 66 Ill. 2d 616, 621 (1977) (Dooley, J., specially concurring). This court has repeatedly recognized that the express language of section 13–217 clearly "grants a plaintiff the *absolute* right to refile a dismissed complaint" and "[w]e may not infringe upon this statutory right to refile." (Emphasis added.) *Case*, slip op. at 7. See also *Timberlake v. Illini Hospital*, 175 Ill. 2d 159, 163 (1997) ("Section 13–217 provides plaintiffs with the *absolute* right to refile their complaint within one year or within the remaining period of limitations, whichever is greater" (emphasis added)); *Gendek v. Jehangir*, 119 Ill. 2d 338, 340 (1988) ("section [13–217] provides plaintiffs with the absolute right to refile their complaint *** for the reasons specified therein"). "Section 13–217 operates as a savings statute, with the purpose of facilitating the disposition of litigation on the merits and avoiding its frustration upon grounds unrelated to the merits." *Case*, slip op. at 7, citing *S.C. Vaughan Oil Co. v. Caldwell, Troutt & Alexander*, 181 Ill. 2d 489, 497 (1998). Applying section 20(c) of the Restatement (Second) of Judgments to this case, plaintiffs' refiling of their willful and wanton claim was permitted under section 13–217, and *res judicata* does not bar the refiled action.

In my view, the doctrine of *res judicata* and the rule against claim-splitting should be employed with judicial restraint and not as tools to dispose of litigation. Here, there was no adjudication on the merits of plaintiffs' willful and wanton claim. To label a voluntary dismissal without prejudice as a final judgment on the merits mischaracterizes the true nature of the disposition. Plaintiffs' negligence claim was dismissed on grounds of immunity and plaintiffs did not appeal that determination or engage in any improper claim-splitting. Under these circumstances, *res judicata* and the rule against claim-splitting should not be applied mechanically to infringe on plaintiffs' legislatively created right to refile their voluntarily dismissed claim, based on grounds totally divorced from the merits of plaintiffs' claim.

I would therefore reverse the judgment of the appellate and circuit courts and remand for further proceedings. For the foregoing reasons, I respectfully dissent.

JUSTICE FITZGERALD joins in this dissent.

## Dissent Upon Denial of Rehearing

JUSTICE KILBRIDE, dissenting:

I respectfully dissent from the majority's denial of plaintiffs' petition for rehearing for the reasons stated in my original dissent, as well as the points raised by plaintiffs. As noted in the original dissent and in plaintiffs' petition for rehearing, the majority depends entirely on the flawed rationale of *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325 (1996). In its reliance on *Rein*, the majority misapprehends and confuses the doctrine of *res judicata* with the rule against claim-splitting. Additionally, the majority has overlooked the express-reservation exception to *res judicata* set forth in section 26 of the Restatement (Second) of Judgments.

I also agree with plaintiffs that the majority misapprehends and overlooks the distinction between this case and *Rein,* and that the rationale of *Rein* is also flawed because it fails to distinguish between two different factual situations for purposes of *res judicata* and the rule against improper claim-splitting. In *Rein*, the plaintiffs asserted two different theories of recovery. One was involuntarily dismissed, and the plaintiffs voluntarily dismissed the other to appeal the involuntary dismissal order. On appeal, the involuntary dismissal was upheld. In that situation, both *res judicata* and the rule against improper claim-splitting properly barred relitigation of the voluntarily dismissed claim because the plaintiffs litigated the involuntarily dismissed claim to a final judgment before the appellate court. The plaintiffs in *Rein* could have presented both of their theories of recovery at the same time and then appealed the adverse ruling, but instead chose to abandon their voluntarily dismissed claim to appeal immediately the involuntarily dismissed claim.

The situation in this case is entirely distinguishable because the plaintiffs never split their cause of action. Here, the plaintiffs raised two different theories of recovery. The negligence count was involuntarily dismissed, and the willful and wanton claim was later voluntarily dismissed "without prejudice." When the negligence count was dismissed, the willful and wanton claim survived and was still a viable claim. As the United States Supreme Court noted in determining that an "adjudication upon the merits" is the opposite of a "dismissal without prejudice":

> "The primary meaning of 'dismissal without prejudice,' we think, is dismissal without barring the plaintiff from returning later, to the same court, with the same underlying claim. That will also ordinarily (though not always) have the consequence of not barring the claim from *other* courts, but its primary meaning relates to the dismissing court itself. Thus, Black's Law Dictionary (7th ed. 1999) defines 'dismissed without prejudice' as 'removed from the court's docket in such a way that the plaintiff may refile the same suit on the same claim,' [citation], and defines 'dismissal without prejudice' as '[a] dismissal that does not bar the plaintiff from refiling the lawsuit within the applicable limitations period,' [citation]." (Emphasis in original.) *Semtek International Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505-06, 149 L. Ed. 2d 32, 41, 121 S. Ct. 1021, 1027 (2001).

At the time plaintiffs voluntarily dismissed their willful and wanton claim, it was still viable. The effect of their voluntary dismissal was to remove the claim from the court's active docket, although they could still refile the same claim within the applicable limitations period. Following the voluntary dismissal of the willful and wanton claim, there was no appeal from the plaintiffs' involuntary dismissal of the negligence claim in this case. This situation simply does not fall within the doctrine of *res judicata* or the rule against improper claim-splitting.

We are in agreement that a plaintiff must assert all claims arising from the same transactional setting in one lawsuit. If all claims are not initially brought together, the plaintiff will have split the cause of action and will be barred from raising not only what was already raised and decided, but also what might have been. See Restatement

(Second) of Judgments §§ 24(1), 25 (1982). This rule is clearly inapplicable in this case because plaintiffs brought all of their claims in their original lawsuit.

Moreover, there is no dispute that *res judicata* and the rule against claim-splitting is violated when a plaintiff voluntarily dismisses a claim, proceeds to litigate on the remaining claims, and then refiles the voluntarily dismissed claim in a second action. In effect, that is what happened in *Rein* when the plaintiffs voluntarily dismissed their second claim so they could appeal the involuntary dismissal of their first claim.

As noted in the original dissent, this court has adopted section 26(1) of the Restatement (Second) of Judgments. Subsection (b) of that section provides that claim preclusion based on claim-splitting does not apply when the court in the first action expressly reserves the plaintiff's right to maintain the second action. The comments to section 26(1)(b) establish that "[a] determination by the court that its judgment is 'without prejudice" (or words to that effect)" ordinarily acts as an express reservation of the voluntarily dismissed claim. Thus, when the trial court in this case granted plaintiffs' motion to dismiss voluntarily the willful and wanton claim without prejudice, it expressly reserved that claim under section 26(1)(b). The majority offers no justification for ignoring this application of section 26(1)(b).

In this case, the trial court granted the plaintiffs' "routine" motion to dismiss voluntarily their remaining willful and wanton claim "without prejudice" when the attorney representing them died on the eve of trial. As plaintiffs aptly note, defendants did not object to this voluntary dismissal in *Hudson I*. If defendants felt they would be prejudiced by the court's express reservation of plaintiffs' right to refile by dismissing the claim "without prejudice," then they should have objected at the time the order was entered, allowing plaintiffs to withdraw their motion. If anything, forfeiture should bar defendants from now challenging plaintiffs' refiling of a claim that the trial court expressly reserved by dismissing it "without prejudice" and without objection. Defendants' silence in acquiescing to the voluntary dismissal should bar the defendants' stale objection to the refiled suit. Additionally it does not appear that defendants were prejudiced by plaintiffs' voluntary dismissal and refiling because any discovery previously undertaken and prior discovery orders in the voluntarily

dismissed case are to be considered in resolving discovery issues in the second case. 210 Ill. 2d R. 219(e).

What distinguishes this case from *Rein* are the events that occurred *after* the plaintiffs voluntarily dismissed their remaining claims. As plaintiffs explain, in contrast to *Rein*, the interim period between the voluntary dismissal in *Hudson I* and the subsequent filing in *Hudson II* was one of inactivity–"a hiatus, but never a detour, on the path from point A to point B." Although the plaintiffs in both *Rein* and this case initially had a right to refile their voluntarily dismissed claims under section 26(1)(b) of the Restatement (Second) of Judgments, the plaintiffs in *Rein* abrogated their right by continuing to litigate their involuntarily dismissed count, thus improperly splitting their claims.

For the foregoing reasons, I respectfully dissent from the denial of plaintiffs' petition for rehearing.

JUSTICE FITZGERALD joins in this dissent.