2021 IL App (1st) 200369-U

SIXTH DIVISION
June 11, 2021

No. 1-20-0369

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| DAVID J. DUBIN, Individually and as Assignee Pursuant to the January 21, 2015, Settlement Agreement in *In re David J. Dubin,* Bk. No. 13-29157 and *In re 35th & Morgan Corp.*, Bk. No. 13-44986, | ) ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | No. 2015 L 000684 |
| v. | ) ) | Honorable James Snyder, |
| LEVENFELD PEARLSTEIN, LLC, | ) ) | Judge Presiding. |
| Defendant-Appellee. | ) | |

PRESIDING JUSTICE MIKVA delivered the judgment of the court.
Justices Harris and Oden Johnson concurred in the judgment.

**O R D E R**

¶ 1   *Held*:   The circuit court's final judgement in favor of defendant is affirmed. Plaintiff did not forfeit his right to appeal summary judgment rulings against him as to two categories of damages asserted in his complaint by stipulating to a judgment against him on other categories of damages. Summary judgment was properly granted because plaintiff lacks standing to pursue damages he alleged were suffered by a corporate entity and he did not suffer his own personal damages.

¶ 2   Plaintiff David Dubin sued defendant Levenfeld Pearlstein, L.L.C. (Levenfeld), a law firm,

for legal malpractice. The circuit court granted summary judgment in favor of Levenfeld with

respect to Mr. Dubin's two largest categories of claimed damages. The parties then stipulated to a final judgment in favor of Levenfeld as to all other categories of damages. Mr. Dubin seeks to appeal the court's summary judgment ruling and an earlier ruling denying his motion for summary judgment on Levenfeld's statute of limitations defense. For the following reasons, we affirm.

¶ 3                                                   I. BACKGROUND

¶ 4      From 2006 through 2012, Levenfeld represented Mr. Dubin and various companies through which he did business, including the 35th & Morgan Development Corporation (35th & Morgan Corp.), which was formed to develop the Bridgeport Project, an affordable housing project in the Bridgeport neighborhood of Chicago. Mr. Dubin personally guaranteed loans made by PNC Bank, N.A. (PNC) for the Bridgeport Project. Mr. Dubin also made personal guarantees on loans for a second project, the Western Project, developed by the 3600 South Western Project Limited Partnership. Mr. Dubin alleged in his complaint that Levenfeld's malpractice in negotiating with PNC for his guarantees on the loans for these two projects forced 35th & Morgan Corp. into bankruptcy and also forced him personally to declare bankruptcy.

¶ 5      Mr. Dubin filed his petition for bankruptcy on July 22, 2013. On November 20, 2013, Levenfeld and other creditors filed an involuntary bankruptcy petition against 35th & Morgan Corp. On January 21, 2015, Mr. Dubin and 35th & Morgan Corp., among others, signed a global settlement agreement with Gus Paloian, who served as the trustee in both bankruptcies. Mr. Dubin claims that through this agreement he was assigned any malpractice claims that 35th & Morgan Corp. had against Levenfeld. The global settlement agreement provided, in relevant part:

> "Levenfeld Pearlstein Representation. Debtor asserts that he engaged the law firm
> of Levenfeld Pearlstein LLC to provide legal representation to the Dubins (the 'Levenfeld
> Pearlstein Representation'), including legal representation relating to, among other things:

2

      a. Advice regarding protection of college funds; and

      b. 35th & Morgan Development Corp.

* * *

    <u>Assignment of Levenfeld Pearlstein Claims</u>. Upon entry of an Approval Order by the Dubin Bankruptcy Court, Dubin Trustee hereby assigns, transfers, conveys and delivers to Debtor (a) all of Dubin Trustee's right, title, and interest in and to the Dubin Estate's right, title, and interest in and to any and all claims relating to malpractice or other liability arising in connection with the Levenfeld Pearlstein Representation (the "Levenfeld Pearlstein Claims") and (b) all of the Dubin Estate's right, title, and interest in and to any and all funds recovered by the Debtor in settlement or satisfaction of the Levenfeld Pearlstein Claims."

¶ 6    "Debtor" is defined in the global settlement agreement as "David J. Dubin." The global settlement agreement defines "the Dubin Estate" as "the bankruptcy estate *** of David J. Dubin." The "Dubin Trustee" is defined as "Gus A. Paloian, not individually but solely as chapter 7 trustee *** for the bankruptcy estate *** of David J. Dubin." The global settlement agreement was approved by the bankruptcy court on January 21, 2015.

¶ 7    On January 22, 2015, Mr. Dubin filed his initial complaint against Levenfeld for legal malpractice. On October 15, 2019, Levenfeld filed a motion for summary judgment, raising several arguments, including that Mr. Dubin lacked standing to pursue any claim for damages based on profits that would have been earned on the Bridgeport or Western Projects. On January 7, 2020, the circuit court denied that motion but, in its order, noted the following about Mr. Dubin's claim for damages based on lost profits on these projects: "there is very little of these claims to be put to the trier of fact. To the extent to which the Plaintiff can state a claim for these damages, he is given

14 days to amend his complaint."

¶ 8     On January 21, 2020, Mr. Dubin filed his first amended complaint, which spelled out, in a single count for malpractice against Levenfeld, greater detail as to five categories of damages. The amended complaint alleged:

"44. As a proximate result of [Levenfeld]'s negligence, Dubin suffered the following damages:

a. His lost share of the profits from the Bridgeport Project totaling approximately $16,770,000;

b. His lost share of the profits from the Western Project totaling approximately $3,600,000;

c. Legal fees paid to his bankruptcy attorney in the amount of $637,944;

d. Funds borrowed from his wife to settle with the Bankruptcy Trustee in the amount of $465,000;

e. Profit in the amount of $1,838,240 from a project called Shopps of Shoemaker which had to be abandoned as part of the Bankruptcy settlement; and

f. Costs in the amount of $706,860 for staff, office expenses and consultants necessary to provide information during the Bankruptcy proceedings."

¶ 9     At a pretrial conference on February 11, 2020, the parties discussed whether Mr. Dubin had standing to pursue damages for the lost profits from the Bridgeport and Western Projects, as listed in subparagraphs 44(a) and (b) of the amended complaint. The circuit court indicated that it was going to reconsider, on its own motion, the standing arguments Levenfeld had made in its summary judgment motion as to claims for these categories of damages.

¶ 10     On February 19, 2020, the circuit court entered partial summary judgment against Mr.

Dubin and in favor of Levenfeld, ruling that Mr. Dubin lacked standing to pursue any claim for the damages in categories (a) and (b), listed above. The court said: "Neither of these claims are Plaintiff's, they are both claims of 35th & Morgan Development Corp." The circuit court rejected, "as a matter of law," Mr. Dubin's argument that he was assigned these claims in the global bankruptcy settlement agreement. The circuit court also rejected Mr. Dubin's claim that he had an individual claim for his loss of "his entire interest in the 35th & Morgan Development Corp.," explaining that this was "not a claimed damage in Plaintiff's Amended Complaint."

¶ 11    Mr. Dubin requested a finding, under Illinois Supreme Court Rule 304(a), that the circuit court's summary judgment order be deemed immediately appealable. The court denied this request, finding that it was not an appropriate order for a Rule 304(a) finding because, while two categories of damages had been foreclosed, the claim for malpractice remained.

¶ 12    On February 20, 2020, Mr. Dubin filed a "Stipulation To Obtain Final Judgment" which said that, while the circuit court's summary judgment order of February 19, 2020, was not a final judgment, it imposed a limitation on recoverable damages that made it "not economical to take this lawsuit to trial." That stipulation provided: "In order to obtain a final and appealable order based on and consistent with the Court's February 19, 2020 summary judgment ruling, Plaintiff hereby permanently waives and relinquishes his right to seek to recover the Remaining Damages." "Remaining Damages" was defined as those damages listed in subparagraphs (c), (d), and (f) of paragraph 44 of the amended complaint. Mr. Dubin had already waived any right to the damages listed in subparagraph 44(e) of his amended complaint regarding the Shoppes of Shoemaker.

¶ 13    The circuit court then entered a final judgment against Mr. Dubin and in favor of Levenfeld on the entirety of his malpractice claim. That order, in full, stated as follows:

        "This cause comes before the Court on Plaintiff's Stipulation to Obtain Final

Judgment, the Court having entered an Order on February 19, 2020 granting partial summary judgment in favor of Defendants as to the items of damage claimed in paragraph 44(a) and (b) of Plaintiff's Amended Complaint, and Plaintiff having withdrawn its claim for damages relating to Shopps of [Shoemaker], and Plaintiff having permanently waived and relinquished any right or claim to recover any other items of damages, and having stipulated to entry of a final judgment in favor of Defendant in this action;

IT IS HEREBY ORDERED that Judgment is hereby entered in favor of Defendant and against Plaintiff as to all claims in this action. Defendant is awarded its costs."

¶ 14    This appeal follows.

¶ 15                              II. JURISDICTION

¶ 16    The two summary judgment orders cited in Mr. Dubin's notice of appeal were interlocutory. However, on February 20, 2020, the circuit court entered a final judgment pursuant to the parties' stipulation that judgment should be entered against Mr. Dubin and in favor of Levenfeld on his remaining claims, resulting in a final and appealable order. Mr. Dubin filed a timely notice of appeal that same day. This court has jurisdiction pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303 (eff. July 1, 2017), governing appeals from final judgments entered by the circuit court in civil cases.

¶ 17                              III. ANALYSIS

¶ 18    There are three issues on appeal. First, Levenfeld contends that the entire appeal is moot because, in the parties' stipulation, Mr. Dubin conceded that Levenfeld had no liability on any of his claims and Mr. Dubin is bound by that stipulation. Second, if we reject that argument, which we do, we must decide whether Mr. Dubin has standing to recover lost profits from the Bridgeport or Western Projects. Third, if we find that he does not, we must decide if Mr. Dubin has an

independent personal claim for his lost interest in these projects. Our resolution of these issues makes it unnecessary to address the parties' remaining arguments on appeal, which include the other bases on which Levenfeld argues it was entitled to summary judgment and Mr. Dubin's claim that he should have been granted summary judgment on Levenfeld's statute of limitations defense.

¶ 19                    A. The Stipulated Judgment Did Not Moot This Appeal

¶ 20    Levenfeld argues that the final judgment that Mr. Dubin stipulated to decided all the issues, even liability, in favor of Levenfeld. Levenfeld insists that Mr. Dubin is trying to evade the requirements of Rule 304(a) and improperly split his claim. We disagree with Levenfeld that, by signing the stipulation, Mr. Dubin waived his claim for the categories of damages listed in subparagraphs 44(a) or (b) above or that he has engaged in improper claim splitting. Rather, once the circuit court ruled that he could not pursue damages based on the lost profits from the Bridgeport and Western Projects, Mr. Dubin voluntarily and irrevocably gave up his ability to pursue the other categories of damages in his complaint in order to pursue an immediate appeal of that ruling. While neither party has provided any precedent either endorsing or condemning this maneuver, it seems to us an acceptable and reasonable step for a plaintiff to take when the circuit court has barred a significant portion of a plaintiff's claimed damages. We reject Levenfeld's arguments that this approach is not permitted under supreme court rules or that Mr. Dubin has forfeited his right to appeal the circuit court's summary judgment order.

¶ 21    Levenfeld insists, relying on *John G. Phillips v. Brown*, 197 Ill. 2d 337, 339 (2001), that the parties' stipulation did not just decide whether Mr. Dubin could pursue the remaining categories of damages but instead "had the effect of deciding *all* issues, including liability in [Levenfeld]'s favor." (Emphasis in original.) However, the stipulation does not say that, and neither does our supreme court's decision in *Brown*. The court in *Brown* held that there is no final

order if a sanctions motion, which is treated as a separate claim in the underlying case, is still pending. That is not the issue here. No motion was pending, and no claim or portion of a claim was left unresolved when Mr. Dubin initiated this appeal. Rather, there was a final order in this case because Mr. Dubin's assertion that he was entitled to damages for lost profits was decided in Levenfeld's favor in the circuit court's February 19, 2020, order and the other categories of damages he sought to recover on his only claim, which was the malpractice claim against Levenfeld, were waived by stipulation. We fail to see any relevance *Brown* has to this case.

¶ 22 Levenfeld labels what Mr. Dubin did here as impermissible "claim splitting," and evasion of Rule 304(a), citing *Hudson v. City of Chicago,* 228 Ill. 2d 462, 473 (2008). But we also fail to see the relevance of *Hudson*. In that case, after the circuit court entered an order dismissing the plaintiffs' claim for negligence, the plaintiffs voluntarily dismissed *and then refiled* their remaining claim for willful and wanton misconduct. Our supreme court held that the final judgment on the involuntarily dismissed claim for negligence precluded the plaintiffs from proceeding separately on their other claim. As the court recognized there, this was claim splitting, as "[the] plaintiffs commenced a new action after part of their original cause of action had gone to final judgment in a previous case." *Id.* at 483-84. Because "none of the exceptions to the rule against claim-splitting" were present, this was not permitted. *Id.* at 484.

¶ 23 There was no claim splitting in this case. Mr. Dubin chose to forego certain less consequential categories of damages in order to appeal the circuit court's refusal to allow him to proceed on the two most significant categories of damages sought in his complaint. As Mr. Dubin puts it: "There was only one claim brought against [Levenfeld] and judgment was entered in its favor because the trial court entered partial summary judgment on [Mr.] Dubin's damages relating to lost profits and [Mr.] Dubin, pursuant to the parties' Stipulation, waived the right to seek to

recover the Remaining Damages." Levenfeld has provided no reason that we should prohibit this or view it as claim splitting. We reject Levenfeld's argument that this appeal is moot or that all issues have been resolved pursuant to the parties' stipulation.

¶ 24    B. Mr. Dubin Has No Claim for Lost Profits from the Bridgeport or Western Projects

¶ 25    The circuit court granted partial summary judgment in Levenfeld's favor as to the categories of damages alleged in subparagraphs 44(a) and (b) of Mr. Dubin's complaint. Those two subparagraphs sought damages for:

"a. His lost share of the profits from the Bridgeport Project totaling approximately $16,770,000;

b. His lost share of the profits from the Western Project totaling approximately $3,600,000."

¶ 26    The circuit court ruled that "[n]either of those claims are Plaintiff's, they are both claims of 35th & Morgan Development Corp." The circuit court also found "as a matter of law, that 35th & Morgan Development Corp.'s claims were not assigned to Plaintiff in the bankruptcy Settlement Agreement." Finally, the court rejected Mr. Dubin's argument that he "lost, among other things, his entire interest in the 35th & Morgan Development Corp.," as "this [wa]s not a claimed damage in Plaintiff's Amended Complaint." The court's order specifically provided that "Defendant's Motion for Summary Judgment is granted as to claims for lost profit damages as plead[ed] in Plaintiff's Amended Complaint at Paragraphs 44(a) and 44(b)."

¶ 27    We review the circuit court's decision to grant summary judgment *de novo*. *Swann & Weiskopf v. Meed Associates*, 304 Ill. App. 3d 970, 974 (1999). In addition, "[t]he issue of standing is a matter of law and is subject to *de novo* review." *Nationwide Advantage Mortgage Co. v. Ortiz*, 2012 IL App (1st) 112755, ¶ 1. Summary judgment is a drastic measure and should only be granted

if the movant's right to judgment is clear and free from doubt. *Outboard Marine Corp. v. Liberty Mutual Insurance Company*, 154 Ill. 2d 90, 103 (1992).

¶ 28    For the reasons that follow, we agree with the circuit court that Mr. Dubin has no standing to pursue the lost profits of 35th & Morgan Corp. and also that he has no independent personal claim for lost profits.

¶ 29    1. Mr. Dubin Lacks Standing to Pursue Lost Profits on Behalf of 35th & Morgan Corp.

¶ 30    The law is well settled in Illinois that an individual with an ownership interest in a corporation cannot bring a claim for the lost profits of that corporation. "Where there is no showing that [the] plaintiff himself [was] injured in any capacity other than in common with his fellow stockholders, the cause of action belongs to the corporation [citation], and a stockholder may not seek relief on his own behalf." *Zokoych v. Spalding*, 36 Ill. App. 3d 654, 663 (1976).

¶ 31    However, it is also true that a corporation can assign claims, including claims for legal malpractice, to its current or former shareholders. See, *e.g.*, *Learning Curve International, Inc. v. Seyfarth Shaw, LLP*, 392 Ill. App. 3d 1068, 1079-80 (2009). Thus, as the circuit court recognized, and Levenfeld does not dispute, Mr. Dubin would have standing to pursue 35th & Morgan Corp.'s lost profits if that were a claim that had been assigned to him.

¶ 32    Mr. Dubin contends that there was such an assignment in the global settlement agreement that was reached in the bankruptcy court, which presided over both Mr. Dubin's personal bankruptcy and the bankruptcy of 35th & Morgan Corp. The circuit court rejected this argument "as a matter of law."

¶ 33    Mr. Dubin points out that, when he entered into the global settlement agreement, he was acting on behalf of both his personal bankruptcy estate and the 35 & Morgan Corp. bankruptcy estate. He stresses that he entered into the agreement with Mr. Paloian, who was the trustee in both

bankruptcy cases. Mr. Dubin relies on a provision of the agreement assigning him all "right, title and interest in any and all claims relating to malpractice or other liability arising in connection with the Levenfeld Pearlstein Representation." He further relies on the fact that the agreement defined the "Levenfeld Pearlstein Representation" to specifically include Levenfeld's representation relating to "35th & Morgan Development Corp."

¶ 34    Levenfeld responds by pointing out that the section of the global settlement agreement Mr. Dubin relies on is silent about any claims *owned* by 35th & Morgan Corp. or the 35th & Morgan Corp. bankruptcy trustee. According to Levenfeld, all that was assigned to Mr. Dubin was any claim that he personally may have had against Levenfeld prior to the bankruptcy. Levenfeld argues that any assignment of the claims of 35th & Morgan Corp. would have had to come from the 35th & Morgan Corp. trustee and that Mr. Paloian was, for purposes of this particular assignment, not acting in that capacity.

¶ 35    We agree with Levenfeld that the language of the global settlement agreement does not assign to Mr. Dubin any claims that originally belonged to 35th & Morgan Corp. The agreement makes clear that, as to the assignment that Mr. Dubin is relying on, Mr. Paloian was acting as the trustee *for Mr. Dubin's bankruptcy*, not for 35th & Morgan Corp.'s bankruptcy. The agreement plainly states that the action is being taken by the "Dubin Trustee," defined as "Gus A. Paloian, not individually but solely as chapter 7 trustee for the bankruptcy estate of David J. Dubin."

¶ 36    In addition, the agreement explicitly provides that the only claims being assigned are those that belonged to Mr. Dubin. The agreement states that the assignment is of "the Dubin Estate's" malpractice claims against Levenfeld and defines "the Dubin Estate" as "the bankruptcy estate of David J. Dubin."

¶ 37    As Levenfeld points out, because it was a global settlement agreement with respect to

11

which many parties, including Mr. Dubin and Mr. Paloian, wore several hats, the drafters of the agreement took care to "be precise" not only about what was being agreed to but also on which estate's behalf Mr. Paloian was acting as trustee. Because Mr. Paloian was acting only as the trustee for Mr. Dubin's estate relative to this assignment of claims, he could only assign claims belonging to that estate. This did not include a malpractice claim seeking lost profits that might have been owned by 35th & Morgan Corp. The language of the global settlement agreement simply does not support Mr. Dubin's assertion that 35th & Morgan Corp.'s malpractice claims were assigned to him.

¶ 38    Mr. Dubin's alternative argument is that the language of the settlement agreement is ambiguous and that we should therefore consider what the parties intended. See *Thompson v. Gordon*, 241 Ill. 2d 428, 441 (2011) ("If the contract language is ambiguous, a court can consider extrinsic evidence to determine the parties' intent.").

¶ 39    Mr. Dubin argues that there is evidence from which one could reasonably conclude that the parties to the global settlement agreement intended to assign him these claimed damages, including (1) the specific reference in the global settlement agreement to Levenfeld's representation relating to "35th & Morgan Development Corp.", and (2) the fact that Mr. Paloian never brought a claim for malpractice against Levenfeld on behalf of 35th & Morgan Corp. Mr. Dubin argues that the parties must have intended the claims to have been assigned to him because, if they did not, the reference to the nature of the legal representation relating to 35th & Morgan Corp. would be meaningless and, if Mr. Paloian did not believe these claims were assigned to Mr. Dubin, Mr. Paloian himself would have had a duty to sue Levenfeld as trustee for 35th & Morgan Corp.

¶ 40    Levenfeld responds to these alternative arguments by arguing first that there is no

ambiguity and second that Mr. Dubin's arguments about the parties' intent are not persuasive. Specifically, Levenfeld argues that it was appropriate for the global settlement agreement to specify Levenfeld's representation relating to 35th & Morgan Corp. because Mr. Dubin could have had his own damages related to that representation. Levenfeld suggests, for example, that these damages might include the "[l]egal fees paid to [Mr. Dubin's] bankruptcy attorney in the amount of $637,944"—that Mr. Dubin expressly waived in the parties' stipulation for a final judgment. And Levenfeld's response to the argument that Mr. Paloian never pursued any claim against Levenfeld on behalf of 35th & Morgan Corp. is that perhaps he saw "no value" to any such claim.

¶ 41    We do not think it necessary to reach these alternative arguments because, in our view, the plain language of the global settlement agreement is clear. The only claims assigned to Mr. Dubin were the claims that he himself owned before the bankruptcy. Those were the only claims that the Dubin Trustee could or did assign. These claims did not include a claim for lost profits, under any legal theory, belonging to 35th & Morgan Corp.

¶ 42    As a final point, we note that in their briefs the parties make no distinction between lost profits on the Bridgeport Project, as referenced in subparagraph 44(a) of the amended complaint, and lost profits on the Western Project, as referenced in subparagraph 44(b). The parties treat these both as claims initially belonging to 35th & Morgan Corp. and argue about whether they were assigned to Mr. Dubin. According to Levenfeld's motion for summary judgment, however, the Western Project was owned by a limited partnership, which was in turn owned by various corporate entities, 35th & Morgan Corp. not among them. Mr. Dubin has made no argument, in the circuit court or on appeal, that he has standing to seek lost profits on behalf of any entity other than 35th & Morgan Corp. We reject that argument for the reasons we have just set forth and Mr. Dubin has suggested no other basis on which he could be entitled to recover lost profits on the Western

13

Project.

¶ 43    2. Mr. Dubin's Claim for Loss of His Ownership Interest in 35th & Morgan Corp.

¶ 44    Mr. Dubin also insists that, in addition to the purported assignment to him of any claim that 35th & Morgan Corp. might have had for lost profits due to Levenfeld's professional negligence, he may assert his own claim to recover his "lost interest" in the corporate entity that was 35th & Morgan Corp. Mr. Dubin argues that to make him whole in this regard, Levenfeld must pay him "an amount of money equal to the value of his interest in 35th & Morgan Development Corp.," which he asserts is the same amount—$16,722,027—as the lost profits on the Bridgeport Project.

¶ 45    The circuit court stated in its order that this was "not a claimed damage in Plaintiff's Amended Complaint." Mr. Dubin argues that the circuit court improperly focused only on paragraph 44, while a broader examination of his amended complaint would have revealed allegations that Levenfeld's negligence forced him to personally file for bankruptcy and that, as a result of that bankruptcy, he lost the value of his entire ownership interest in 35th & Morgan Corp.

¶ 46    Levenfeld responds that Mr. Dubin waived any such claim by stipulating to a judgment in Levenfeld's favor with respect to all claims for damages except those seeking the corporation's lost profits under subparagraphs 44(a) and (b) of the amended complaint. Mr. Dubin does not appear to us to respond to this argument in his reply brief, but we are not wholly convinced that this is correct.

¶ 47    While we agree with Levenfeld that the circuit court's final order appears to limit Mr. Dubin's claim after his stipulation to the lost profit claims that are specified in subparagraphs 44(a) and (b) of his amended complaint, the parties' stipulation says only that Mr. Dubin is giving up his right to recover "Remaining Damages" which are specifically defined as those damages listed in subparagraphs (c), (d) and (f). Neither party addresses whether there is some conflict between

14

the agreement itself and the circuit court's judgment or, if so, which one would control.

¶ 48    We need not resolve this issue, however. Even assuming that Mr. Dubin did not waive such a claim by his stipulation, it is clear that there is no direct individual claim here. A claim for the lost value of Mr. Dubin's ownership in the corporation, measured by the profits the corporation would have generated absent the alleged malpractice, is indistinguishable from a claim for lost profits belonging to the corporation. As the case that Mr. Dubin himself cites makes clear, an owner or shareholder has his own, nonderivative claim only where the injury impacts the owner directly, rather than as an owner of the corporation. *Small v. Sussman*, 306 Ill. App. 3d 639, 644 (1999). And as we have stated, "[i]n order to proceed in any individual capacity, a shareholder must allege something more than wrong to the corporate body [citation], and this injury must be separate and distinct from that suffered by other shareholders." (Internal quotation marks omitted.) *RS Investments Ltd. v. RSM US, LLP*, 2019 IL App (1st) 172410, ¶ 22. Mr. Dubin's lost "value" based on the profit that his ownership would have generated is precisely the harm that was shared by any owner of the corporate entity. Mr. Dubin had no personal, nonderivative, claim for lost profits resulting from the fact that the Bridgeview Project was never completed.

¶ 49                                      IV. CONCLUSION

¶ 50    The resolution of these issues makes it unnecessary for us to reach the other issues briefed by the parties, including Mr. Dubin's arguments against the circuit court's September 27, 2019, denial of his motion for summary judgment on Levenfeld's statute of limitations defense and Levenfeld's alternative arguments for affirming the court's grant of summary judgment in its favor.

¶ 51    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 52    Affirmed.