2024 IL App (1st) 221088
No. 1-22-1088

FIRST DIVISION
April 29, 2024

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| R. SCOTT ALSTERDA, in His Capacity as Bankruptcy Trustee for the Estate of Jaime Mireles, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) ) | No. 15 CH 03489 |
| THOMAS J. DART and THE COOK COUNTY SHERIFF'S MERIT BOARD, | ) ) ) | Honorable Neil H. Cohen, |
| Defendants-Appellees. | ) | Judge presiding. |

_____

JUSTICE PUCINSKI delivered the judgment of the court, with opinion.
Presiding Justice Fitzgerald Smith and Justice Lavin concurred in the judgment and opinion.

**OPINION**

¶ 1 Plaintiff R. Scott Alsterda, in his capacity as bankruptcy trustee for the estate of Jamie Mireles, appeals from the circuit court's June 2022 order dismissing his second amended complaint with prejudice. For the following reasons, we affirm.

¶ 2 BACKGROUND

¶ 3        Mireles was formerly employed as a correction officer by the Cook County Sheriff's Department. On July 22, 2014, Thomas J. Dart, in his capacity as Cook County Sheriff (Sheriff), filed a complaint against Mireles with the Cook County Sheriff's Merit Board (Board). The Sheriff alleged that on March 31, 2012, Mireles used excessive force when he struck a detainee's face with his hand. The Sheriff also alleged that Mireles failed to submit an incident report documenting the use of force or to present himself to be interviewed about the incident. The complaint requested that Mireles's employment be terminated.

¶ 4              The Board's Termination Decision and Mireles's Prior Appeal

¶ 5        The Board conducted a hearing on October 23, 2014. In January 2015, the Board issued a final administrative decision upholding the charges against Mireles and terminating his employment. The decision was signed by eight Board members, including John Rosales.

¶ 6        On February 27, 2015, Mireles filed a complaint for administrative review in the circuit court of Cook County. On January 7, 2016, the circuit court entered an order affirming the Board's decision.

¶ 7        Mireles appealed to this court, raising a number of arguments. Among these, he claimed that his use of force was not excessive; the investigation into the incident was insufficient; and the Board's determination that he failed to properly report the incident was against the manifest weight of the evidence. *Mireles v. Cook County Sheriff's Merit Board*, No. 1-16-0203 (Mar. 8, 2017) (unpublished summary order under Illinois Supreme Court Rule 23(c)). Notably, Mireles did not raise any challenge to the composition of the Board. In March 2017, this court affirmed the Board's termination decision. *Id.*

¶ 8              The 2014 Circuit Court Decision in *Taylor v. Dart* and Affirmance by Our Court

¶ 9    In a separate proceeding involving a different employee's termination by the Board, in August 2014 the circuit court issued a decision that forms the basis of Mireles's current appeal. Specifically, in *Taylor v. Dart*, No. 13-CH-26319 (Cir. Ct. Cook County) (Aug. 19, 2014), the circuit court vacated a termination decision on the basis that one of the Board members, Rosales, was not duly appointed under the governing statute. Specifically, whereas section 3-7002 of the Counties Code (55 ILCS 5/3-7002 (West 2012)) required Board members to be appointed for six-year terms, Rosales was appointed for a term of less than one year. The circuit court in *Taylor* found that the Board "was not lawfully constituted at the time of the hearing and decision" so that the termination decision was invalid.

¶ 10    After the Sheriff and Board appealed, we agreed with the circuit court that the Board decision was void because it was "illegally constituted" at the time of Taylor's termination decision. *Taylor v. Dart*, 2016 IL App (1st) 143684, ¶ 47. In January 2017, our supreme court issued a supervisory order directing our court to additionally consider whether the Cook County Board of Commissions had home rule authority to approve interim appointments to the Board. *Taylor v. Dart*, No. 121507 (Ill. Jan. 25, 2017). Pursuant to that supervisory order, this court issued another opinion, holding that that (1) the Board was not authorized to appoint an individual for less than a six-year term, (2) Rosales's participation in Taylor's termination decision rendered it void, and (3) the Cook County Board of Commissioners did not have home rule authority to approve interim appointments. *Taylor v. Dart*, 2017 IL App (1st) 143684-B.

¶ 11        Mireles Challenges His Termination Decision on the Basis of *Taylor*

¶ 12    In October 2017, Mireles filed a petition pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2016)) seeking to vacate the January 2016 circuit court judgment that affirmed the Board decision. Mireles asserted, for the first time, that the Board's

decision was void because one or more members "were not duly appointed" at the time it rendered the January 2015 decision. He noted that Rosales (whose appointment was found invalid by our court's decisions in *Taylor*) was a member of the Board that rendered his termination decision. Thus, he urged that the Board was "illegally constituted" pursuant to *Taylor* and the Board's decision was void.

¶ 13　　The Sheriff moved to dismiss Mireles's section 2-1401 petition, arguing, *inter alia*, that section 2-1401 could not be used to challenge an administrative decision and that Mireles "waived or forfeited his argument that the Merit Board was not properly constituted" by not previously raising it. In April 2018, the circuit court granted the Sheriff's motion to dismiss the section 2-1401 petition and remanded the case to the Board.

¶ 14　　The Sheriff subsequently moved to reconsider the April 2018 remand order based on "new and controlling law" applying the *de facto* officer doctrine to bar similar challenges based on the invalidity of the Board members. Specifically, the Sheriff argued that *Lopez v. Dart*, 2018 IL App (1st) 170733, and *Cruz v. Dart*, 2019 IL App (1st) 170915, had "altered the legal application of *Taylor v. Dart*." The Sheriff argued that in light of those decisions, the *de facto* officer doctrine barred Mireles from relying on *Taylor* to collaterally attack his termination decision.

¶ 15　　In his opposition to the Sheriff's motion, Mireles argued that the *de facto* officer doctrine did not apply to him. He also asserted that all eight of the Board members who participated in his termination decision (not just Rosales) were illegally appointed for terms of less than six years.

¶ 16　　The circuit court stayed any decision on the Sheriff's motion to reconsider, citing the pending appeal before our supreme court in *Goral v. Dart*. Our supreme court issued that

- 4 -

decision in October 2020. *Goral v. Dart*, 2020 IL 125085. In January 2021, the Sheriff filed a motion to "recall and dismiss the case," arguing that the supreme court's decision in *Goral* made clear that the *de facto* officer doctrine bars a challenge to the composition of the Board that is not asserted until after the Board has taken "substantive action."

¶ 17                    Substitution of Plaintiff and Filing of the Second Amended Complaint

¶ 18          In May 2021, Alsterda, as bankruptcy trustee for Mireles's estate, moved for substitution as plaintiff.[1] In January 2022, the circuit court granted the substitution motion.[2] In the same order, the circuit court granted leave to file a superseding amended complaint.

¶ 19          On January 14, 2022, Mireles filed a second amended complaint for judicial review of the Board's January 2015 decision. Mireles pleaded two counts, only one of which is germane to this appeal. In count I, Mireles sought review under the administrative review law, but he explicitly recognized "this count had already been ruled upon and it is included solely for the purpose of preserving it for any appeal."[3]

¶ 20          The second count was entitled "declaratory judgment" and sought to invalidate Mireles's termination decision based on the composition of the Board, combined with the fact that the Board rendered its decision after the August 2014 circuit court order in *Taylor*. In that count, Mireles alleged that the Board was defective in several respects when it rendered the January 2015 termination decision. First, Rosales was one of the Board members, notwithstanding that he had "already been determined improperly-seated" by the prior August 2014 *Taylor* order.

---

[1] The record reflects that in May 2015, Mireles filed for Chapter 7 bankruptcy in the U.S. Bankruptcy Court for the Northern District of Illinois.

[2] For ease of reference, we refer to plaintiff-appellant as "Mireles" notwithstanding the substitution of Mireles's bankruptcy trustee as the party plaintiff.

[3] In briefing in the circuit court, Mireles acknowledged he included this count to preserve it for appeal but was "not seeking to relitigate" that count.

Further, Mireles alleged that several other Board members had been appointed to terms of less than six-years and that certain of these were "non-staggered." Mireles alleged that the August 2014 *Taylor* order "put the Sheriff and the Board on notice of the defects," yet his termination decision was entered in January 2015 without "any action to fix the defects in the appointments."

¶ 21    Mireles additionally pleaded that the Board decision "could not be protected by the *de facto* officer doctrine" in light of the circuit court's August 2014 *Taylor* order. Mireles acknowledged that he did not raise these defects in his proceedings before the Board, but he alleged "he did not need to as a matter of law once Taylor's challenge was made because the doctrine is 'backward looking' and does not allow a Board with defects to continue operating."

¶ 22    Mireles's second amended complaint thus sought declarations that the Board was illegally constituted during his proceedings before the Board "from the [August 2014] Taylor order onward," including his January 2015 termination decision, and that the *de facto* office doctrine did not apply to him.

¶ 23    In February 2022, the Sheriff moved to dismiss Mireles's second amended complaint pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2022)). The Sheriff argued that the *de facto* officer doctrine warranted dismissal because Mireles did not raise a timely challenge to the composition of the Board. The Sheriff urged that application of the *de facto* officer doctrine was supported by the 2020 supreme court decision in *Goral* and several other appellate court decisions. The Board subsequently joined the Sheriff's motion to dismiss. Mireles filed an opposition to the motion.

¶ 24                The Circuit Court Dismisses the Second Amended Complaint

¶ 25    On June 23, 2022, the circuit court dismissed the second amended complaint with prejudice. The circuit court first acknowledged that "Count I is clearly pled solely to preserve the issue for appeal." The circuit court proceeded to agree with the Sheriff that count II was barred by the *de facto* officer doctrine, relying on the supreme court decision in *Goral* and First District case law. The circuit court rejected Mireles's argument that the doctrine should not apply to his challenge to the Board's January 2015 decision because the Board was already "on notice" that it was "illegally constituted" after the 2014 circuit court order in *Taylor*. The circuit court noted that the First District had applied the *de facto* officer doctrine in *Cruz*, 2019 IL App (1st) 170915, and *Lopez*, 2018 IL App (1st) 170733, notwithstanding that the Board decisions at issue in those cases were also rendered after the 2014 *Taylor* order.

¶ 26    Further, the circuit court found that in *Malacina v. Cook County Sheriff's Merit Board*, 2021 IL App (1st) 191893, "the First District has now expressly held that the *de facto* officer doctrine applies unless the plaintiff raised the issue of the illegal composition of the Merit Board before the issuance of the final administrative decision." The circuit court concluded that because Mireles "never raised the issue of the Merit Board's composition prior to the issuance of the final administrative decision," count II of the second amended complaint was barred by the *de facto* officer doctrine. On that basis, it dismissed the second amended complaint.

¶ 27    Mireles filed a timely appeal.

¶ 28                                    ANALYSIS

¶ 29    On appeal, Mireles maintains that the January 2015 decision was invalid because Rosales and other Board members were seated for less than six-year terms. He emphasizes that the decision against him was issued after the circuit court's 2014 decision in *Taylor* vacating a

- 7 -

Board decision due to Rosales's illegal appointment. He thus reasons that the Sheriff and Board were "put on notice that such a defect violated the Act," yet the Board issued the 2015 decision against him without correcting the defects in its composition. Because he asserts that the circuit court in *Taylor* decision put the Board on "notice" of the defects, he maintains that it is inequitable to apply the *de facto* officer doctrine against him. In doing so, he emphasizes certain language in this court's decision in *Goral* that the doctrine "looks backward" but does not permit an illegally constituted board to "keep doing business" after a court declares it invalid. *Goral v. Dart*, 2019 IL App (1st) 181646, ¶ 101. He suggests he raises a unique argument that distinguishes his case from other recent precedent applying the *de facto* officer doctrine to bar similar challenges to Board decisions.

¶ 30 In response, the Sheriff first contends that, as a procedural matter, Mireles's second amended complaint was barred by waiver, forfeiture, or *res judicata* because Mireles did not challenge the composition of the Board until after his prior appeal. Secondly, the Sheriff argues that the circuit court correctly found that the *de facto* officer doctrine bars Mireles's challenge, as he did not raise any issue concerning the composition of the Board until long after it rendered in its January 2015 termination decision.

¶ 31 For the following reasons, we affirm the dismissal of the second amended complaint.

¶ 32 Standard of Review

¶ 33 With respect to the standard of review, we note that Mireles's brief recites the standards for challenging a decision pursuant to the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2022)). See *Medponics Illinois, LLC v. Department of Agriculture*, 2021 IL 125443, ¶ 29 (describing standard for reviewing administrative agency's determinations on questions of law, fact or mixed questions of law and fact). However, in this appeal he is not directly

challenging a decision of the Board. Rather, he appeals from the dismissal of count II of his second amended complaint, in which he sought a declaratory judgment from the circuit court that, *inter alia*, the Board was not legally constituted at the time of his termination decision and that *de facto* officer doctrine did not apply to him.

¶ 34    The trial court granted the motion to dismiss under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2022)). Such a motion "challenges the legal sufficiency of a complaint based on defects apparent on its face," and an order granting such a motion is reviewed *de novo*. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006); see *Cahokia Unit School District No. 187 v. Pritzker*, 2021 IL 126212, ¶ 24 (*de novo* review applies to a dismissal under either section 2-615 or section 2-619 of the Code of Civil Procedure).[4]

¶ 35    *Res Judicata* Bars Mireles's Current Claim Because It Could Have Been Raised Earlier

¶ 36    Before we delve into the parties' arguments regarding the application of the *de facto* officer doctrine, we address the Sheriff's threshold arguments that Mireles's second amended complaint is procedurally barred by waiver, forfeiture, or *res judicata*. The Sheriff points out that Mireles did not raise any argument disputing the validity of the Board that rendered his termination decision, either in the prior administrative review action in the circuit court, or in his corresponding unsuccessful appeal to this court. See *Mireles*, No. 1-16-0203.

¶ 37    We find the Sheriff's *res judicata* argument persuasive. "The doctrine of *res judicata* provides that a final judgment on the merits rendered by a court of competent jurisdiction bars

---

[4] We note that the Sheriff's motion to dismiss could properly have been asserted as one under section 2-619, which "admits the legal sufficiency of the claim but asserts defenses or defects outside the pleading to defeat the claim." *Cahokia Unit School District No. 187*, 2021 IL 126212, ¶ 23. In any event, the standard of review is the same.

any subsequent actions between the same parties or their privies on the same cause of action." *Hudson v. City of Chicago*, 228 Ill. 2d 462, 467 (2008). "Three requirements must be satisfied for *res judicata* to apply: (1) a final judgment on the merits has been rendered by a court of competent jurisdiction; (2) an identity of cause of action exists; and (3) the parties or their privies are identical in both actions." *Id.* The doctrine "bars not only what was actually decided in the first action but also whatever could have been decided." *Id.*

¶ 38    In his reply brief, Mireles does not dispute that the parties or their privies in his original action for administrative review and his current challenge are identical. However, he asserts that the other two elements of *res judicata* are missing. First, he claims there was no "final judgment" because "[t]he entire premise of Mireles' 2-1401 petition was to aver that the Merit board's termination decision is void because the Board was not properly constituted." Thus, he claims "*res judicata* does not apply because the decision is void and does not constitute a final judgment."

¶ 39    This argument is unpersuasive. Notwithstanding his current assertion that the *Board*'s decision was void, his original complaint for administrative review and prior appeal resulted in two final judgments on the merits rendered by courts of competent jurisdiction: the circuit court's January 2016 decision, as well as this court's March 2017 order affirming the Board's determination. *Mireles*, No. 1-16-0203. Mireles does not attempt to suggest that this court's prior decision in his original appeal was not a final judgment rendered by a court without jurisdiction. We find that the prior court decisions constituted final judgment on the merits that fulfilled this element of *res judicata*.

¶ 40    Mireles otherwise asserts there is no identity of cause of action because his "initial appeal was about whether or not the Board's decision was against the manifest weight of the evidence"

and the merits of whether his termination was justified, whereas "[t]he 2-1401 petition relates to the Board having improperly-seated members and the decision being void as a result."[5] Thus, he claims his prior appeal and this one do not have "the same body of operative facts."

¶ 41     We disagree, keeping in mind that "Illinois has adopted the transactional test in determining whether an identity of cause of action exists for purposes of *res judicata*." *Oshana v. FCL Builders, Inc.*, 2013 IL App (1st) 120851, ¶ 34 (citing *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 309-11 (1998)). Under this test, "claims are part of the same cause of action if they arise from the same transaction or series of connected transactions." (Internal quotation marks omitted.) *Id.* "Subsequent claims may be barred if they originate from a single group of operative facts." (Internal quotation marks omitted.) *Id.* Significantly, this proposition applies "regardless of whether the claims assert different theories of relief or are based on evidence that does not substantially overlap, as long as they arise from the same transaction." *Id.*

¶ 42     Although Mireles's instant challenge to the Board decision is based on a very different legal theory from his prior appeal, both challenges are based on the same transaction: the January 2015 Board decision. All of the operative facts underlying the instant appeal—including the identity of each Board member that participated in the decision—were already known at the time of his prior challenge to the decision and related appeal. Although Mireles chose not to raise any claim disputing the validity of any Board member's appointment in the prior proceedings, that does not mean his current challenge is based on a different "transaction"

---

[5] We note that Mireles's reference in his briefing to "the 2-1401 petition" is puzzling, since the record reflects that the section 2-1401 petition was superseded by the second amended complaint, whose dismissal is the subject of this appeal.

for purposes of *res judicata*. We agree with the Sheriff that insofar as both challenges were premised on the same Board decision, they arise from the same transaction.

¶ 43 Finally, although Mireles does not dispute the point, we find that there is an "identity of parties or their privies" for application of *res judicata*. *Hudson*, 228 Ill. 2d at 470. We recognize that the prior challenge and related appeal were brought by Mireles personally, whereas his bankruptcy trustee was substituted as the party plaintiff before filing the second amended complaint that is the subject of this appeal. However, for *res judicata* purposes, "[a] nonparty may be bound pursuant to privity if his interests are so closely aligned to those of a party that the party is the virtual representative of the nonparty." (Internal quotation marks omitted.) *Oshana*, 2013 IL App (1st) 120851, ¶ 23. It is clear that a bankruptcy trustee is aligned with the interests of debtor (Mireles), such that they are in privity for purposes of applying *res judicata*.

¶ 44 We thus agree with the Sheriff that the current challenge is barred by *res judicata*. This is an independent ground for affirming dismissal of the second amended complaint. Nonetheless, even assuming that *res judicata* did not apply, we otherwise agree with the circuit court that the *de facto* officer doctrine independently warranted dismissal.

¶ 45 *De Facto* Officer Doctrine

¶ 46 "The *de facto* officer rule is a common law equitable doctrine that confers validity on acts performed by an official acting under the color of official title, even though it is later determined that the official's appointment to that position was legally deficient." *Malacina*, 2021 IL App (1st) 191893, ¶ 20 (citing *Goral*, 2020 IL 125085, ¶ 71). "Under the doctrine, the acts of a person actually performing the duties of an office under color of title are valid so far as the public or third parties who have an interest in them are concerned." *Goral*, 2020 IL

125085, ¶ 71. The doctrine is meant to "avoid the chaos that would result from multiple and repetitious suits challenging every action taken by every official whose claim to office could be open to question." *Id.*

¶ 47 The doctrine "is applied as a defense to an attack on the acts of an officer or appointee in a collateral proceeding," which "necessarily requires a prior act or judgment that is, or may be, subject to attack." *Id.* ¶ 72. "[T]he doctrine was never intended to preclude a *timely* challenge to an official's authority; it is, instead, a defense to a collateral challenge brought after the official's action has been completed." (Emphasis in original and omitted.) *Malacina*, 2021 IL App (1st) 191893, ¶ 21.

¶ 48 This district has applied a "first challenger exception" to the *de facto* officer doctrine, by which "the first individual to raise a challenge to an official's authority to act is entitled to relief—a reward for exposing the defective appointment." *Id.* ¶ 23. However, "once that first party secures the court ruling invalidating the Board's composition (and gets relief for having done so), any previous final decisions from that illegally constituted board are insulated from challenge." *Goral*, 2019 IL App (1st) 181646, ¶ 91. Consistent with this exception, the *Taylor* plaintiff—the first one to raise the defect in the Board member Rosales's appointment— received the benefit of having his termination decision vacated. *Taylor*, 2017 IL App (1st) 143684-B. However, this district has "taken a narrow view of the 'first challenger' exception. *Malacina*, 2021 IL App (1st) 191893, ¶ 25 (recognizing that "in *Cruz*, 2019 IL App (1st) 170915, we held that a post-decision challenge to the composition of the Board was barred by the *de facto* officer rule, even though Cruz identified different invalidly appointed officials" than the one identified in *Taylor*).

¶ 49 Following this court's determination in *Taylor* that Rosales was invalidly appointed (*Taylor*, 2017 IL App (1st) 143684-B), this court has consistently applied the *de facto* officer doctrine to bar a number of similar challenges to Board's authority, where the challenges were not asserted until *after* the Board's issued a final decision. See, *e.g.*, *Acevedo v. Cook County Sheriff's Merit Board*, 2019 IL App (1st) 181128, ¶ 25 (plaintiff's claim that his termination decision was void because Rosales participated in it was barred by the *de facto* officer doctrine where "Acevedo raises the same issue with Rosales's appointment as was raised in *Taylor*, *Lopez*, and *Cruz*—an appointment to a term of less than six years"); *Cruz*, 2019 IL App (1st) 170915, ¶ 38 (*de facto* officer doctrine applied to attempt to void decision based on appointments of three other Board members to terms of less than six years, which was "the same problem with the appointment procedure that was before us in *Taylor* and *Lopez*"); *Lopez*, 2018 IL App (1st) 170733, ¶ 59 (applying *de facto* officer doctrine where Lopez was "not the first claimant to have brought the illegal appointment of Rosales to light," reasoning this "will circumvent the upheaval that would doubtlessly result if we were to invalidate the Merit Board's decision and invite hundreds of plaintiffs" to challenge decisions rendered during Rosales's "unauthorized term").

¶ 50 By contrast, in *Goral*, both this court and our supreme court rejected the Sheriff's reliance on the *de facto* officer doctrine where the plaintiffs timely challenged the authority of the Board by filing a complaint *before* the Board had rendered decisions against them. See *Goral*, 2019 IL App (1st) 181646, ¶ 1 (explaining that *Goral* plaintiffs consisted of employees charged by the Sheriff with disciplinary infractions who "[f]rom the outset of their administrative cases *** have challenged the authority of the Board to hear their cases, based on claims that the Board is illegally constituted"). This court's decision explained that the doctrine did not apply

to the *Goral* plaintiffs because at the time they filed a lawsuit challenging the validity of Board's composition, "none of plaintiffs' administrative actions had gone to a final decision." *Id.* ¶ 99. Rather, they "have been raising statutory-authority arguments before the Board since their cases began." *Id.*

¶ 51 Our court in *Goral* went on to emphasize that the timing of the challenge "makes all the difference in the world." *Id.* ¶ 100. Then, in language relied upon by Mireles in this appeal, we went on to say:

> "The '*de facto* officer' doctrine is concerned with the fear of unearthing old decisions
> \*\*\*. But that doctrine is not—and could not—be concerned with pending or brand-new
> cases. Once a court decides that a board is illegally constituted, that board can't keep
> hearing pending cases, much less entertain newly filed ones. To say otherwise would
> be to say that court decisions mean nothing.
>
> The '*de facto* officer' doctrine looks backward. It does not look forward. Once a
> court declares a board's composition invalid, we may protect its old decisions, but we
> absolutely do not allow it to keep doing business—illegally—as if we had never issued
> our ruling." (Emphasis omitted.) *Id.* ¶¶ 100-01.

¶ 52 Our supreme court affirmed, emphasizing that the timing of the plaintiffs' challenge precluded application of the *de facto* officer doctrine:

> "Timing matters. Here, given that the Merit Board had not taken any substantive action
> regarding plaintiffs' disciplinary charges prior to the filing of their lawsuit in circuit court,
> we conclude that the *de facto* officer doctrine does not apply. Plaintiffs were not trying to
> unwind or undermine any administrative determination by the Merit Board. At the time
> plaintiffs filed both their original and second amended complaints, there had been no action

or judgment by the Merit Board in plaintiffs' proceedings to which the doctrine could confer validity. Because the *de facto* officer doctrine has not been—and should not be—employed as an obstacle to preclude a timely challenge to the authority of an administrative agency, it does not justify the dismissal of plaintiffs' complaint." *Goral*, 2020 IL 125085, ¶ 75.

¶ 53                    The *De Facto* Officer Doctrine Applies to Bar Mireles's Challenge

¶ 54        Mireles urges that despite the above precedent, he presents an argument against application of the *de facto* officer doctrine that is unique and unresolved by this court. His position is that after the 2014 circuit court decision in *Taylor*, the Board was on notice of any defective appointments and thus had an obligation to correct them before it issued the 2015 decision terminating him. He suggests that this invalidates the decision, regardless of when he first raised a challenge to the Board's composition. That is, he argues that the "timing matters" language from the supreme court decision in *Goral* does not address his "particular issue: what effect does the original [circuit court] Taylor Order have on the application of the *de facto* officer doctrine given that [our appellate court decision in *Goral*] recognized that the doctrine is 'backwards looking'?"

¶ 55        To be clear, Mireles does not dispute that he did *not* challenge the Board's composition before it rendered a decision against him. Rather, relying on the language from this court's opinion in *Goral* that a board should not be permitted to "keep doing business" after a court declares its composition invalid (2019 IL App (1st) 181646, ¶ 101), he suggests the Board was obligated to "fix[ ] itself" after it was put on notice by the circuit court's 2014 *Taylor* order. He suggests there should be no obligation to raise a timely challenge to the Board's composition, as it is "unjust" to "place the onus on officers to raise an objection" when the

Board and the Sheriff "knew full well" of defects in the composition. Mireles argues that application of *de facto* officer doctrine would reward the Sheriff and Board's "bad behavior" for failing to correct defects after the *Taylor* order.

¶ 56    He asserts that our court has "never squarely confronted this issue, and has never explained why the *Taylor* order does not matter." He suggests that officers subject to an adverse Board decision issued after the August 2014 *Taylor* order and "while the Board had the same defects" should not be barred by *de facto* officer doctrine, regardless of whether they raised a challenge before the Board's decision. Mireles urges his position is supported by Justice McMorrow's concurrence in *Daniels v. Industrial Comm'n*, 201 Ill. 2d 160 (2002), insofar as it urged that the *de facto* officer doctrine should not be applied "mechanically" and should not apply where illegal appointments "were the result of malfeasance or a deliberate attempt to subvert" a governing statute. *Id.* at 174-75 (McMorrow, J., specially concurring). Indeed, he accuses the Board of "deliberate malfeasance" by continuing to render decisions with "defective appointments" after the August 2014 *Taylor* order.

¶ 57    We find Mireles's arguments unavailing in light of precedent from this court and the supreme court reaffirming the validity of the *de facto* officer doctrine and the requirement of a *timely* challenge to avoid its application. We point out that, notwithstanding Mireles's reliance on certain language of our 2019 decision in *Goral*, that decision still made clear that an officer has the burden to make a timely challenge to avoid the *de facto* officer doctrine. Indeed, shortly after stating that the doctrine "looks backward" and does not allow the Board to keep doing business illegally (*Goral*, 2019 IL App (1st) 181646, ¶ 101), this court in *Goral* made clear that a party still needed to assert a *timely* challenge to the Board's composition, *i.e.*, while the matter was still pending:

"To put it plainly: Once *Taylor* was decided, any Sheriff's employee whose case was then-pending before the Board, or who was charged in a new case post-*Taylor*, had every right to challenge the Board's composition for the same reasons as in *Taylor* (or for different reasons). *Old cases already finally decided, no, but pending or new administrative cases, yes*. Plaintiffs' cases were pending *** and the '*de facto* officer' doctrine did not prevent them from challenging the Board's composition." (Emphasis added.) *Id.* ¶ 105.

¶ 58    Importantly, this statement of the law "not only survived the supreme court's review of our decision but was the very basis for the supreme court's holding" affirming our decision in *Goral*. *Malacina*, 2021 IL App (1st) 191893, ¶ 31 (citing *Goral*, 2020 IL 125085). As explained in *Malacina*, our supreme court held that

"[t]he Board's then-illegal composition remained ripe for a challenge by a party before the Board—*as long as the party raised it at the time of those administrative proceedings*, and not merely afterward, post-final decision. Goral did so *** *before* the Board's final administrative decision was rendered. And that is precisely why the Illinois Supreme Court held that Goral's claim was not subject to a *de facto* officer defense." (Emphases in original.) *Id.* (citing *Goral*, 2020 IL 125085, ¶ 75).

¶ 59    In short, our supreme court held that the *de facto* officer doctrine did not apply to the *Goral* plaintiffs because they made a "timely challenge" before an adverse Board decision; that is, they "were not trying to unwind or undermine any administrative determination by the Merit Board." *Goral*, 2020 IL 125085, ¶ 75. This is precisely what Mireles is attempting to do here with respect to his 2015 termination decision by the Board, without having made a timely challenge.

¶ 60 Our supreme court's holding in *Goral* controls. This is so notwithstanding Mireles's claim that it is "unjust" to require him to raise a challenge because the Board should have fixed any defects after the circuit court's 2014 decision in *Taylor*.[6]

¶ 61 Our supreme court in *Goral* reaffirmed that the *de facto* officer doctrine "serves to preserve the integrity of an official action that is complete and where the authority of the agency or public official was not challenged in a timely manner." *Id.* ¶ 74. *Goral* makes clear that the doctrine is a valid defense to a collateral attack on an old decision—which is exactly what Mireles attempted through his second amended complaint. While *Goral* held that the doctrine does not apply to a party who raised a "timely challenge to the authority of an administrative agency" (*id.* ¶ 75), that is, before the Board rendered a decision, it is undisputed that Mireles did not do so. Indeed, he did not raise a challenge to the validity of the Board until October 2017, after this court rejected his prior appeal from the same Board decision.

¶ 62 *Goral* is binding precedent that requires a timely challenge to the Board's composition to avoid the *de facto* officer defense. Therefore, we must reject Mireles's various equitable and policy-related arguments that he should be excluded from that requirement. Accordingly, the circuit court correctly concluded that the *de facto* officer doctrine warranted dismissal.

¶ 63                                                 CONCLUSION

¶ 64 In summary, we find that: (1) Mireles's challenge to the composition of the Board that rendered his termination decision is barred by *res judicata* given his failure to raise it in the

---

[6] We note, as explained by our supreme court, that "in response to *Taylor*, the legislature amended the Code provision governing Merit Board appointments." *Goral*, 2020 IL 125085, ¶ 12. The amendment permitted the Sheriff to make interim appointments, abolished all existing terms of each Board member, and created a new schedule for staggered terms of Board members. *Id.* (citing Pub. Act 100-562, § 5 (eff. Dec. 8, 2017) (amending 55 ILCS 5/3-7002)).

prior action and appeal, and (2) in any event, the *de facto* officer doctrine operates to independently bar his untimely collateral attack on the Board's decision.

¶ 65      For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 66      Affirmed.

*Alsterda v. Dart*, 2024 IL App (1st) 221088

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 15-CH-03489; the Hon. Neil H. Cohen, Judge, presiding. |
| **Attorneys for Appellant:** | Cass T. Casper, of Disparti Law Group, P.A., of Chicago, for appellant. |
| **Attorneys for Appellee:** | William Andrichik, of Steptoe & Johnson, LLP, of Chicago, for appellee Thomas J. Dart. |